CENTRAL COAL & COKE COMPANY *v.* FITZGERALD.

Opinion delivered November 15, 1920.

1. MASTER AND SERVANT—NEGLIGENCE—JURY QUESTION.—Where, in an action for the death of a mine worker who was struck by a dump car and thrown from a trestle, there was evidence that the foreman, after having directed the deceased to clear dirt from the track, permitted the car to be operated without taking precaution to protect him, the issue whether defendant was negligent was for the jury.

2. MASTER AND SERVANT—ASSUMED RISK—MASTER'S NEGLIGENCE.—A servant does not assume the risk of dangers that arise from the master's negligence unless he is aware of that negligence and appreciates the danger therefrom.

3. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Though a servant was familiar with the danger incident to going upon a trestle leading from the tipple to remove dirt from the track, yet where he was proceeding in obedience to the orders of his foreman, whether he assumed the risk or was guilty of contributory negligence in not notifying the hoisting engineer that he was going upon the track was for the jury.

4.    MASTER AND SERVANT—LIABILITY FOR FOREMAN'S NEGLIGENCE.—
Where a foreman ordered a servant to go into a place of danger,
the servant has a right to rely upon the foreman to protect him;
and if he is injured through the neglect of the foreman to take
proper precautions for his safety, the master will be liable.

Appeal from Sebastian Circuit Court, Greenwood District; *John Brizzolara,* Judge; affirmed.

*James B. McDonough,* for appellants.

1.    The evidence is insufficient to show that any negligence of defendants caused the accident.   89 Ark. 581; 100 *Id.* 53; 86 *Id.* 289.   The scintilla doctrine as to evidence does not prevail now in Arkansas.   114 Ark. 112.

2.    It was an accident for which appellants were not liable.   116 Ark. 82.   Verdicts can not be predicated upon conjecture.   113 Ark. 353; 116 *Id.* 82; 174 S. W. 574.   See, also, 116 Ark. 82; 154 N. Y. 90; 136 *Id.* 423; 101 *Id.* 661; 64 Kan. 553; 74 Iowa 248; Elliott on Ev., § 89; 179 U. S. 658; 181 Fed. 91; 190 *Id.* 717.

Negligence must be proved and not presumed.   100 Ark. 462; 79 *Id.* 608.   The operators of the train owed no duty to Morfew under the circumstances here, for he suddenly stepped in front of a moving car or train.   95 S. E. 311.   No notice was necessary or warning, as Morfew was an employee and he had knowledge of the risk and danger.   29 Okla. 351; 187 Mass. 549; 96 Ark. 500; 174 S. W. 150; 107 Ark. 341. Inferences can not be built upon inferences or verdicts supported in that manner.   219 Fed. 686.   Actually there is no testimony showing negligence of appellants and the burden was on them.   116 Ark. 82.

3.    The court should have given a peremptory instruction for defendants, as there was no evidence of negligence.

4.    The court erred in its instructions.   130 Ark. 583.

5.    It was error to admit the evidence of Doctors Butler and Howard, giving their opinions as to the cause of death.   206 Fed. 765; 86 N. E. 606; 95 Kan. 451; 151 S. W. 950.   It was also error to admit the testimony of

Mrs. Morfew as to conversations with her husband. 116 Ark. 555; 88 *Id.* 168; 115 *Id.* 584.

6. The verdict is excessive.

*John W. Goolsby,* for appellee.

1. The moving car was the proximate cause of the injury. This was for the jury, and they have settled it. 86 Ark. 289.

2. There is no testimony that Morfew knew of any danger to which he was exposed, and no notice was given him, nor was the danger obvious. 75 Ark. 291; 96 *Id.* 206; 77 *Id.* 458; 106 *Id.* 25.

3. The doctrine of assumed risk does not apply here. 106 Ark. 25. The question of contributory negligence was submitted to the jury on proper instructions, and their verdict should not be disturbed.

The verdict is not excessive. He suffered greatly, and could not sleep or rest, and he left a widow and two minor children.

WOOD, J. The Central Coal & Coke Company (hereinafter called company) owned and operated mine No. 11 in Sebastian County, Arkansas. It was a shaft mine. The coal, dirt and rock were drawn up in cars from the bottom of the shaft by steam power. The coal was brought up in separate cars from the rock and dirt. The mine had the usual tipple. There was a trestle built of wood on which ran the rock and dirt cars for the purpose of carrying away the rock and dirt from the tipple. This trestle started at the tipple and extended north for a distance of about eighty feet. At the tipple—the lowest point—the trestle was about ten or twelve feet high and it ascended at an angle of about twenty-five degrees. The place where the dirt car stood when not in use was at the lower end of the trestle next to the tipple. The dirt and rock were hoisted into a metal chute and were dumped from this chute into the rock and dirt car. This car ran on four wheels. It was six or seven feet long, three or four feet wide and about six feet high. It was a self-

dumping car. After the rock and dirt were dumped from the metal chute into this car, the car was then pulled up the trestle by steam power. From two to four feet north of where the dirt car stood at the lower end of the trestle there was a stairway extending from the ground to the trestle. The steps of this stairway were about ten or twelve inches wide and two and a half feet long. When the cars loaded with rock and dirt were ready to be hoisted, the men working on top were notified by signal bells and by whistle that the cars were coming up. The whistle was on top and all working on top could hear the signal. The dumping of the rock and dirt into the metal chute and into the dirt car also made a great deal of noise, which could have been heard by a man working anywhere on the trestle.

J. A. Morfew had been an employee of the company at the mine for about two years and was familiar with the manner in which the mine was operated. It was his duty to perform any work required of him by the top foreman or any one having authority over him.

The rock, dirt, and small fragments of coal that had been dumped at the upper end of the trestle had accumulated in the shape of a cone sloping at an angle of about forty-five degrees until it was about forty feet high at its highest point. It had filled in under the trestle to such an extent that the trestle and track, for a part of the distance from the tipple to the top of the trestle, rested on the dump. The coal in the dump was burning nearly all the time, but persons could go from the ground to the trestle up the dump without getting into the fire. The most practical way, however, to reach the trestle was by the stairway which was erected for the purpose of getting up to the tipple and dirt car. In hauling and dumping the dirt it gets to the track of the trestle and sometimes over the track, and when it does, in order to further use the dirt car, it is necessary to remove the dirt.

A man by the name of Marshall Chamlee was in the employ of the company as ''top boss,'' having direction of the men working on top. It was necessary for one going on top to work to notify the dirt engineer for the protection of the men. Chamlee had been requested by a carpenter, who had some work to do about the trestle, to. send some one up to remove the dirt off the trestle, and in compliance with this request Chamlee directed Morfew to remove it. The dirt had accumulated over the track near the north end of the trestle, and Chamlee directed Morfew to get a shovel and remove the dirt so that it would not interfere with the dumping of the dirt and stop the production of coal. Morfew went for the shovel, and Chamlee went about his work at some other place. He was called into the hoist engine room. Morfew ascended the stairway. He was observed about half way up. At that time the dirt car was standing where the dirt is dumped into it from the chute. It was in plain view of Morfew. He was on the ladder or the trestle right at the car, and when the dirt car started up, he either fell or jumped or the car hit him. A witness who was observing the accident could not tell which. Morfew's thigh was broken, and he had cuts about the face. He lived about twelve days after the accident; suffered a great deal, and said he was going to die. In the opinion of the physician who attended him he died from embolus, or clot in the blood, caused from the injury. Morfew said to one who was among those first to reach him after his injury, that the ''car knocked him off.'' Another who was present just after the injury told Morfew that he had two bad cuts on his face and asked him what caused them. Morfew said, ''The rock car hit me.'' It was suggested to him that the cuts were too high for that and Morfew then said: ''I don't know whether the rock car hit me or not.''

This action was instituted by the appellee as administrator of the estate of Morfew against the company and Marshall Chamlee, appellants, to recover damages

for the benefit of Morfew's widow and next of kin and of the estate of Morfew, alleged to have been caused by the negligence of appellants resulting in the death of Morfew.

The above are substantially the facts upon which the jury returned a verdict in favor of the appellee in the sum of $5,000. Judgment was rendered for that sum, from which is this appeal.

It could serve no useful purpose to set out in detail and discuss the instructions which were given by the court and the prayers of appellants for instructions which were refused. The rulings of the court in giving and refusing prayers for instructions correctly announce the law applicable to the facts of this record in accord with many previous decisions of this court on the issues of negligence, contributory negligence and assumed risk. One of the grounds urged for reversal by appellants is that there is no substantial testimony to show any negligence on the part of the appellants in causing the injury to Morfew; that the undisputed testimony on behalf of the appellee shows that the appellants were not negligent. Appellants therefore insist that the court erred in not giving appellant's prayer for instruction No. 1, directing the jury to return a verdict in their favor. Appellant's contention can not be sustained for the reason that the undisputed testimony shows that the appellant, Chamlee, was the "top boss" of the appellant company, and had direction of the men who were working at the top of the mine. The jury could have found that in compliance with his direction Morfew had obtained a shovel and was proceeding by way of the stairway or ladder to the trestle and to the place where the track was covered with dirt to remove the same, and that about the time that he reached the trestle, or immediately after he had got upon it, the dirt car was started toward the dump and either knocked him off, or else in his effort to avoid collision with it, he fell or jumped from the steps or ladder.

The testimony shows that Chamlee directed Morfew to clean off the dirt so that the car "could keep dumping" and so as not to "stop the production of coal." The jury had the right to conclude that Morfew understood from this that he was to proceed at once to the task of removing the dirt from the track, and that while so engaged the top boss, under whose immediate direction he was working, would see to it that no dirt car would be moved and run upon him. It appears from the testimony that, at the time the signal was given for the pulling of the dirt car, Chamlee was in the hoist engine room. The jury had the right to find from this testimony that Chamlee, the top boss, after having given directions to Morfew to move the dirt from the track, went to the hoist engine room and knowing that he had specifically directed Morfew to remove the dirt from the track, that he was negligent in not taking the necessary precaution to see that the dirt car was not moved while Morfew was engaged in removing the dirt.

As we view the evidence, the issue as to whether appellants were negligent under the circumstances was clearly one, not of law, but of fact for the jury. As we have already said, this issue was submitted under correct declarations of law. The undisputed testimony shows that the noise created by the dumping of rock and dirt into the metal chute, and from the metal chute into the dirt car, could have been heard by Morfew; also that bells were rung and the whistle was blown as signals for the hoisting of rock and dirt. These noises were distinct notice to the employees working at the top of the mine that the dirt car would soon move up the trestle. If the undisputed testimony showed that Morfew, as servant of all work about the top of the mine, voluntarily had undertaken, as a part of his duty, to remove the dirt from the trestle, being familiar with the methods of operating the mine, he would have had to take notice of the danger incident to the performance of this duty, and would have been held under such circum-

stances to have assumed the risk. Under such a state of case, no notice or warning to him of the danger he was in would have been necessary, and the appellants would not have been negligent in failing to give such notice. Under such circumstances, it would have been the duty of Morfew himself to have informed the hoisting or dirt engineer that he was going upon the trestle to remove the dirt. *Alleghany Improvement Co.* v. *Weir,* 96 Ark. 500; *H. D. Williams Cooperage Co.* v. *Kittrell,* 107 Ark. 341; *Nye* v. *Dalton,* 177 Mass. 549.

But such were not the facts, and therefore the court did not err in refusing to take from the jury the question of the issue as to whether or not Morfew had assumed the risk. The case, as we view the record, comes well within the doctrine that "the servant does not, when he enters the service of another, or while he continues in that service, assume the risk of dangers that arise from the negligence of the master, unless he is aware of that negligence and appreciates the danger therefrom. And, in the absence of knowledge on his part, the servant has a right to rely upon the assumption that the master has performed the duties devolving upon him so as not to expose him to the extraordinary hazards." *A. L. Clark Lumber Co.* v. *Northcutt,* 95 Ark. 291-295, and cases there cited. In the present case, although the undisputed testimony shows that Morfew was familiar with the methods of operating the mine and that he therefore must have known of the danger incident to going upon the trestle to remove the dirt from the track without taking the necessary precaution to first notify the hoisting or dirt engineer that he was going upon the track, still the undisputed testimony shows that he was directed to go upon the trestle to remove the dirt from the track by the top boss who had the right to direct his movements. The testimony warranted the jury in finding, as we have shown, that he was proceeding in obedience to the orders of his superior when he received the injuries. Appellants likewise certainly had no cause to com-

plain of the ruling of the court in submitting the issue to the jury as to whether or not Morfew was guilty of contributory negligence in obeying the orders of his superior.    Appellants contend that the court erred in not permitting them to show by Chamlee that there was no duty of Chamlee to notify Morfew of any movement of the dirt car.    But, since the undisputed testimony shows that Chamlee had directed Morfew to remove the dirt from the track and that Morfew was acting under Chamlee's directions, it follows, as a matter of law, by virtue of the relation between master and servant, that it was the duty of Chamlee to take all necessary precautions to protect Morfew while he was in a place of danger where he had gone under the express direction of the master. As is said in Labatt on Master and Servant, section 440, "The master and servant are not on the same footing. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the neglect of the master, it is but meet that he should be recompensed."

We have examined the other questions presented in the brief of learned counsel for appellants, but do not find there was any reversible error in the rulings of the trial court on any of the various questions presented. Its judgment is therefore affirmed.