WOODLEY PETROLEUM COMPANY *v.* WILLIS.

Opinion delivered January 17, 1927.

1. APPEAL AND ERROR—PRESUMPTION—REFUSAL TO DIRECT VERDICT.—In determining whether the trial court erred in refusing to direct a verdict for appellant, the facts must be weighed in the light most favorable to the appellee, and the judgment will be affirmed if there is any substantial evidence to sustain it.

2. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Generally, the question whether an employee assumed the risk of an injury is one for the jury, and is always so where a servant is acting under instructions of a superior, unless he appreciates the danger incident to obeying the order, or unless such danger is so obvious that a reasonably prudent person would refuse to obey the order.

3. MASTER AND SERVANT—ASSUMED RISK—JURY QUESTION.—Evidence *held* not to establish that the risk of obeying an order of plaintiff's foreman was so obvious that a reasonably prudent person would have refused to obey such order.

4. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—Where, in an employee's action for personal injuries, the evidence justified submission of the issue of assumed risk, it was not

error to submit a correct instruction on contributory negligence where there was evidence tending to establish that defense.

5. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—An instruction to the effect that an employee is in duty bound to obey his employer, and has the right to rely upon the superior knowledge of his employer as to the danger involved in obeying him, unless he knows of the danger himself and appreciates it, or unless the danger is so obvious and imminent that a man of ordinary prudence would not encounter it, *held* correct.

6. TRIAL—ABSTRACT INSTRUCTION.—An instruction, in an action by an employee for personal injuries, that the defendant was not negligent because plaintiff was obeying the orders of his foreman at the time he was injured, was properly refused, where neither party contended that the employer was negligent simply because the employee attempted to obey orders.

7. APPEAL AND ERROR—INVITED ERROR.—Any prejudice resulting from testimony elicited on direct examination of a witness was waived where appellant subsequently elicited the same testimony on cross-examination.

8. APPEAL AND ERROR—IMPROPER ARGUMENT—NECESSITY OF OBJECTION.—An alleged erroneous remark of an attorney will not be considered on appeal where no objection was made at the time and no exceptions were saved.

9. DAMAGES—WHEN NOT EXCESSIVE.—An award of $20,000 for a fractured skull, debarring the plaintiff from work and constituting permanent injuries, when he had previously earned $5 per day, *held* not excessive.

Appeal from Union Circuit Court, Second Division; *W. A. Speer,* Judge; affirmed.

*Roscoe R. Lynn, Marsh & Marlin,* and *Buzbee, Pugh & Harrison,* for appellant.

*Powell, Smead & Knox* and *C. E. Wright,* for appellee.

HUMPHREYS, J. Appellee instituted this suit against appellant in the circuit court of Union County to recover damages in the sum of $50,000 for injuries received by him on account of the alleged negligence of the foreman of appellant in ordering appellee into a dangerous place to perform his work and in failing to provide a reasonably safe place in which said work could be performed. The gist of the complaint is that he received permanent injuries, which entailed great pain and suffering, in

attempting to obey the order of appellant's foreman to ascend a beam inclined to an unusual angle, and which was covered with fresh oil and mud, for the purpose of slipping a sand-trap hanging to a cable in an oil well derrick over a standing-valve in order to put tubing and piping back which had been pulled out of said well to clean it.

Appellant filed an answer to the complaint, denying the material allegations therein relative to the negligence and injury, and interposing the further defenses of contributory negligence and assumption of the risk.

The cause was submitted to a jury upon the pleadings, testimony adduced by the respective parties, and the instructions of the court, resulting in a judgment in favor of appellee in the sum of $20,000, from which is this appeal.

The first and main contention of appellant for a reversal of the judgment is that the undisputed facts reflected by the record show that appellee assumed the risk of whatever injuries he received, and that the trial court erred in refusing to peremptorily instruct a verdict in its favor.

In analyzing the testimony to ascertain whether appellant is correct in its contention, the settled rule of this court requires that the facts be viewed by the court in the most favorable light to appellee, and to affirm the verdict and judgment if there is any substantial evidence to sustain them.

Reviewing the evidence responsive to the issue of the assumption of risk in the most favorable light to appellee, the facts are about as follows:

The accident occurred eight months before appellee attained his majority. He quit school at the age of fourteen years, having reached the eighth grade; he then worked at almost anything around sawmills for four years. He then moved from Texas, his native State, to Louisiana, where he engaged for two years in the oil business, doing nearly every kind of work connected with drilling oil wells, except the work of a derrick-man. In

December, 1921, he came to the Arkansas oil-fields, and commenced to work for appellant in the capacity of a roustabout. The duties of a roustabout were to pull rods and tubing in an oil well. About two months before the injury occurred he was promoted to the position of derrick-man, when it became his duty to do all of the work up in the derrick, which required that he walk, crawl, and climb from one place to another. Appellant was pumping four wells on its lease, and appellee was serving as derrick-man on all four of the wells. When the wells clogged or sanded up, in order to clean them it was necessary to pull the tubing and piping out of them, and, in replacing it the quickest way, it was necessary for the derrick-man to climb up the samson-post and go out on the walking-beam to slip the sand-trap, or large pipe hanging to the cable in the derrick, over the standing-valve or smaller pipe, in order to connect them. There was a safer but slower way of replacing the tubing and pipes by disconnecting the standing-pipe on the floor of the derrick and inserting it in the trap before pulling the trap up and hanging same to the cable in the derrick. The walking-beam is a heavy piece of timber, 14 inches across the top, 22 inches thick in the middle, but tapering towards the ends, and 26 feet long, supported in the center by the samson-post, which is a strong piece of timber 15 feet long, standing firmly in an upright position. The inside end of the beam is directly over the well, to which the rod is attached that goes to the bottom of the well and operates the pump when the walking-beam works up and down, by a timber called a "pitman" connecting the outside end thereof to an eccentric wheel turned by an engine. On April 19, 1922, the well on which appellee was working as derrick-man, under the direction of O. C. Willis, foreman for appellant, clogged with sand, and, in order to clean it, the tubing and piping was pulled out and disconnected about every 60 feet. The sections were about 20 feet long. The tubing and piping were covered with oil and mud, which dripped onto the floor and other parts of the derrick. After the tubing and piping had

been pulled out, they began bailing the sand out of the
well, and continued this work at intervals for about two
and one-half hours. The bailing line was saturated with
oil and mud, which dripped on the walking-beam con-
tinuously and covered it with oil and mud, making it slick
and dangerous. The pitman had broken through the
floor and rested on the ground, causing the walking-beam
to incline to the dangerous angle of 45 degrees. A short
time after the bailing was finished, and before the oil
and mud had dried, or dripped off the walking-beam, the
foreman and employees cleaned out the sand-trap, pulled
it up in the derrick, and started to put the tubing and
piping back into the well by the quickest method in order
to get through without having to work overtime. They
made an effort to pull the trap down over the standing-
valve, but could not get it stabbed in without sending a
man out on the beam to hold and slip the trap over the
standing-valve, so the foreman told appellee to go up on
the beam and stab the large pipe over the small one in
order to finish the work up, and call it a day. Appellee
attempted to obey the order by climbing the samson-post
and crawling out on the walking-beam on his hands and
knees. He had gone only a few feet when he slipped off
the beam, on account of its slick condition and the angle
at which it stood, and fell to the floor on the tubing and
piping, resulting in a fracture of his skull and three of
his ribs. The injuries rendered him unconscious for
fifteen or twenty minutes. After being restored to con-
sciousness by dashing water into his face, he was taken
to a hospital, where a trephine operation was performed
upon his head by removing the pressure of the skull from
his brain. He remained in the hospital for treatment for
about a month, during which time he endured much pain
and suffering. At the time of the injury he weighed 180
pounds, and thereafter lost 27 pounds, weighing only
153 pounds at the time of the trial, some three years after
the injury. As soon as the wound healed he began to
work at intervals, but could not do so long at a time, on
account of pains in his head, dizziness, and nervousness.

There is testimony in the record tending to show that his injuries are permanent.

Appellee testified that he had gone out on the walking-beam frequently to perform his duties incident to his employment, but had never done so when the beam was covered with fresh oil and mud, or when it was inclined to an angle of 45 degrees; that he went up on the samson-post and out on the beam in obedience to the order of his foreman, without realizing the danger; that he was going out hurriedly because the foreman wanted to get the tubing and piping back into the well without working overtime, and that he did not take time to examine the condition of the beam or take into consideration the danger of crawling out on it at the angle at which it was inclined; that, had he taken time to observe the beam, he could have seen its condition and discovered the danger incident to climbing it, but that he had his eyes upon the pipe and was thinking about the performance of his duties.

The foreman testified that appellee had never been directed, during his employment, to go out on the beam while it was covered with fresh oil and mud, or when it was inclined to an angle of 45 degrees; that, although he (the foreman) knew at what angle the beam was inclined and that oil and mud had dripped off of the bailing line onto the beam, completely covering it, he did not himself realize the danger entailed by his order until appellee slipped and fell.

Generally the question of whether an employee assumes the risk of an injury is one for the jury, and is always so where a servant is acting in obedience to the instructions of a superior, unless he knows and appreciates the danger incident to obeying the order, or unless the danger incident to obeying the order of his superior is so obvious and patent that a reasonably prudent person would refuse to obey the order. We cannot say as a matter of law, in the instant case, that appellee knew of the danger, or that the danger was so obvious or patent that he should have known it. The evidence shows that he

exposed himself to the danger in an effort to obey the order of his foreman. The order of the foreman carried an implied assurance that appellee could perform the work without danger to life or limb. Appellee had never before attempted to climb a walking-beam which was covered with fresh oil and mud and standing at an angle of 45 degrees. The order was a hurry-up one for the purpose of replacing the tubing and piping in the well so that the crew would not have to work overtime. Appellee attempted to obey the order in the spirit in which it was given, without taking time to observe the condition of the beam or the angle at which it was inclined. It is clearly portrayed by the evidence that he acted without knowledge or appreciation of the danger, and that the danger was not so obvious or patent that a reasonably prudent person would have refused to obey the order. Even the foreman, with years of experience, did not realize that his order entailed danger to life or limb, although he knew that the beam was covered with fresh oil and mud which had dripped on it from the bailing line, and that it was tilted to an acute angle. The facts in the instant case bring it within the rule announced and applied in the following cases decided by this court: *A. L. Clark Lumber Co.* v. *Northcutt*, 95 Ark. 291, 129 S. W. 88; *Dickinson* v. *Mooneyham*, 136 Ark. 606, 203 S. W. 840; *Central Coal & Coke Co.* v. *Fitzgerald*, 146 Ark. 109, 225 S. W. 433; *St. L. Sw. Ry. Co.* v. *Gant*, 164 Ark. 621, 262 S. W. 654; *Western Coal & Mining Co.* v. *Burns*, 168 Ark. 976, 272 S. W. 357; *Choctaw, O. & G. Ry. Co.* v. *Jones*, 76 Ark. 367, 92 S. W. 244; *Griffin* v. *St. L. I. M. & S. R. Co.*, 121 Ark. 433, 181 S. W. 278.

Appellant next contends for a reversal of the judgment because the court gave appellee's requested instruction No. 2, which is as follows: "You are instructed that it was the duty of the defendant company to use reasonable care to provide the plaintiff with a reasonably safe place in which to work, and, if you find from a preponderance of the evidence that it failed to do so, and the plaintiff was thereby injured, while he was in the exercise

of ordinary care for his own safety, and had not assumed the risk, then your verdict will be for the plaintiff.''

The instruction is assailed because it submitted the issue of an assumed risk to the jury. Under our interpretation of the evidence, heretofore expressed, the assumption of the risk was a jury question, and properly submitted by this instruction, together with others upon the same subject.

Appellant next contends for a reversal of the judgment because the court gave appellee's requested instruction No. 3, which told the jury, if appellant and appellee were both guilty of negligence, this would bar a recovery by appellee. The instruction is assailed because it is said, under the facts reflected by the record, that contributory negligence is swallowed up by the doctrine of assumed risk. The testimony in the instant case does not show that appellee was aware that the walking-beam was covered with fresh oil and mud and that the danger was so imminent and obvious that a person of ordinary prudence would not continue in the work. It is only where the record reflects such to be the fact that the doctrine of contributory negligence and assumed risk become indistinguishable. Appellee, in the instant case, may have been guilty of contributory negligence in failing to observe the condition of the walking-beam, but he could not be held to an assumption of the risk if he did not know of the defect, or if the defect was not so obvious and patent that a reasonably prudent person would refuse to perform the labor. No prejudice resulted to appellant on account of a correct declaration of law relative to the doctrine of contributory negligence.

Appellant next contends for a reversal of the judgment because the court gave appellee's requested instruction No. 4, which is as follows:

''You are instructed that, when an employee is directed by his superior to do a certain work or peform service in a certain place, he is justified in relying upon the superior knowledge and judgment of his employer as to his ability to perform the work with safety under the

circumstances. He has the right to suppose that his superior will not expose him to unnecessary danger. If, when acting under the direct commands of his superior, he is required to go into a place of danger, he does not assume the risk of such danger unless he knew of the danger and appreciated it, or unless the danger was so obvious and imminent that no servant, in the exercise of ordinary care and prudence, would have encountered it, notwithstanding the directions of his superior so to do. So, if you find from a preponderance of the evidence in this case that the plaintiff was specifically directed by defendant's foreman to climb upon the walking-beam, then you are told that plaintiff did not assume the risk incident to the use of said beam in such manner, unless he knew of and appreciated the danger arising from his going thereon, or unless the danger was so open and obvious that no person in the exercise of ordinary care and prudence would have undertaken the task, notwithstanding the directions so to do.''

The instruction is assailed on the alleged ground that its effect was to relieve appellee from an assumption of the risk if he acted under the order of his foreman. We do not so interpret the instruction. We think it a correct declaration of law to the effect that an employee is in duty bound to obey his employer, and has the right to rely upon the superior knowledge of his employer as to the danger involved in obeying him, unless he knows of the danger himself and appreciates it, or unless the danger is so obvious and imminent that a man of ordinary prudence would not encounter it.

Appellant next contends for a reversal of the judgment because the court erred in refusing to give its requested instruction No. 19 as follows: ''You are instructed that, under the facts in this case, you cannot find that the defendant was negligent because plaintiff was obeying the orders of the foreman at the time he fell.''

This instruction, we think, is abstract, as neither party contended in the trial that appellant was negligent

merely because appellee attempted to obey the order of the foreman. The court did not err therefore in refusing the instruction.

Appellant's next contention for a reversal of the judgment is that the court erred in allowing O. C. Willis, in his direct evidence, to testify that the pipe could have been broken up and slid into the sand-trap before it was pulled up into the derrick. We think the evidence is responsive to the issue of negligence, but, if not, any resulting prejudice was waived, because the same information was elicited from said witness by appellant itself, on cross-examination, as evidenced by the following question and answer:

"Q. And you did that the usual and ordinary way you had done all other operations of that kind out there on this lease while he was employed there? A. No sir; we had put them in laying down on the floor; we have broken them up and laying down on the floor—we put them in that way."

This question and answer had reference to the method in assembling the sand-trap and standing-valve preparatory to replacing the tubing and piping in the well.

The appellant also contends that the attorney for the appellee made a remark in the presence of the jury prejudicial to its rights at the time he elicited said information in the direct testimony of O. C. Willis. It is unnecessary to set out the remark of the attorney, because there was no objection made and no exception saved thereto at the time.

Appellant's last contention for a reversal is that the verdict was excessive. At the time of the injury appellee was a young man in good physical condition and earning $5 per day. His skull was fractured and he was compelled to submit to a trephine operation. At the expiration of three years he was 27 pounds under weight, and could only work at intervals of short duration without suffering from headache, dizziness, nervousness and insomnia.

Dr. Mayfield testified that, if the headaches, dizziness and nervousness still existed after a lapse of three years, such symptoms indicated a permanency of the injury. When it is remembered that the verdict is intended to compensate appellee for both mental and physical suffering in the past as well as the future, and for his decreased earning capacity on account of permanent injury, we cannot say that $20,000 is excessive.

No error appearing, the judgment is affirmed.