James B. Berry's Sons Company v. Presnall.

Opinion delivered February 9, 1931.

*Walter J. Terry* and *Randolph P. Hamby,* for appellant.

*Bush & Bush,* for appellee.

Humphreys, J. Appellee brought this suit against appellant in the circuit court of Nevada County to recover damages in the sum of $3,000 for personal injuries received through the alleged negligence of appellant in failing to furnish a safe place to work and to furnish a sufficient number of men to do the work assigned to him.

Appellant filed an answer denying the allegations of negligence and interposing the defenses of contributory negligence, assumption of the risk by appellee, and a written release of all claims and demands by appellee against appellant on account of the injury received.

The cause was submitted upon the pleadings, the testimony adduced by the respective parties and instructions of the court, which resulted in a verdict and consequent judgment against appellant for $1,750, from which is this appeal.

Appellant first contends for a reversal of the judgment because, if the facts are given their greatest probative value, they fail to establish liability. The facts, when given their strongest probative value, are as follows: Appellee was employed by appellant to roll metal drums containing asphalt, weighing 320 to 450 pounds, for a distance of fifty or sixty feet over a runway from an elevation to a shed where the drums were cleaned and loaded in cars for shipment. The runway ran down a slight decline over one-half of the way from the elevation to the shed, then across a small ditch and up a slighter incline to the shed. The ditch had been cut to take care of the waste asphalt from appellant's factory nearby. It was a rule or custom of appellant to take the waste asphalt away once a week, but at the time of appellee's injury it had not been removed for three or four weeks, and was six to twelve inches deep and spread over parts of the ground near the runway. The waste asphalt was soft and sticky. Occasionally a drum of asphalt would get away from an employee rolling it down the decline and slip off the runway into the soft or sticky asphalt. After sinking into the asphalt it was difficult to remove it and get it back on the runway. Sometimes the employee would get the drum back on the runway alone, and at other times he would call in the assistance of other employees. Appellee had been engaged in rolling these drums for about thirty days before his injury on the morning of March 26, 1929. A short time before his injury, and while getting one of the drums ready to roll down the decline, J. W. Smith, the superintendent, came along. Appellee said to Mr. Smith: "This is too heavy for one man to handle." Smith said: "That's all right; get it up there." Appellee said, "Well, what if one of them gets away and rolls off the runway into the asphalt?" Smith said, "Get it out." About an hour and a half after Smith left a drum of asphalt being handled by appellee ran off the runway and stuck in the asphalt some six or eight inches deep. Appellee tried to push it out

and felt a little pain in his stomach and walked off, re-marking that he would have to get somebody else to help him get it out. He turned around and got another drum and rolled it under the shed, and when he started to turn it up on its head he fell against the drum in a ruptured and unconscious condition. He was removed in that con-dition to the hospital. His injury consisted of a double hernia from which he suffered intensely and from which he will continue to suffer unless he submits to an opera-tion. It is practically certain that appellee received his injury in attempting to lift the first drum out of the muck and not when he fell against the second drum which he was attempting to head up. An operation for hernia is a major and a dangerous operation and for that reason appellee refused to submit to same. Immediately after reaching the hospital, appellee was requested to and did sign the following release:

"RELEASE

"Received from James B. Berry's Sons Company of Illinois this 26th day of March, 1929, the sum of one and no-100 dollars and other valuable considerations, in full compromise, payment, satisfaction and discharge of all claims and demands which I have against said company, its employees or agents, for or on account of any and all damages, injury, expenses or loss of whatsoever kind which I have sustained by me in person, right or prop-erty, by or through said company, its employees or agents, by reason of strain due to lifting asphalt drum, or for any matter or thing whatsoever growing out of same. I was born on the 30th day of March, 1890, and am 39 years of age.

"(Signed) C. A. Presnall.

"Witness: A. B. Dickey, Charles I. Gerhart.

"Approved: J. W. Smith, for Jas. B. Berry's Sons Company."

Witness for appellant testified that: "Other valuable considerations" in the release had relation to its obliga-tion or agreement to pay all expenses incident to appel-

lee's recovery and to pay one-half wages during such time as he was recovering.

Appellee admitted that the signature to the release was genuine, but stated that he had no recollection of signing it and knew nothing of it or its contents.

Appellant paid the hospital and doctor bills, and, after paying appellee one-half of his wages for a time, demanded that he have an operation for double hernia. Upon his refusal to do so, it refused to pay him except such days as he worked, and upon his refusal to accept pay just the days he was able to work and after he brought this suit, the foreman discharged him.

Appellee was thirty-nine years of age, was earning $4.50 a day, and suffered painful and permanent injury, which could only be relieved by a dangerous operation.

Appellant argues in support of its first contention that, under the facts detailed above, appellee assumed the risk as a matter of law. The rule of law applicable to facts in nature and effect similar to the facts in the instant case was announced by this court in the case of *Woodley Petroleum Co.* v. *Willis,* 172 Ark. 676, 290 S. W. 953, in language as follows:

"Generally, the question of whether an employee assumes the risk of an injury is one for the jury, and is always so where a servant is acting in obedience to the instructions of a superior, unless he knows and appreciates the danger incident to obeying the order or unless the danger incident to obeying the order of his superior is so obvious and patent that a reasonably prudent person would refuse to obey the order."

The rule thus announced was approved and applied in the recent case of *Owosso Manufacturing Co.* v. *Drennan,* 182 Ark. 389, 31 S. W. (2d) 762. It is true that appellee knew the weight of the drums, that in rolling them they might slip off the runway and stick in the waste asphalt negligently allowed to accumulate by appellant, and that it was hard to remove the drums out of the waste asphalt; but it cannot be said as a matter of law that he appreciated the danger of attempting to lift the drum he

was rolling out of the asphalt. It is discernible from his testimony that he thought the work assigned him was more than a one man's job, and he went to the extent of raising the question with the superintendent, who, in substance, assured him that one man could handle the drums and remove them from the asphalt in safety, should they slip off the runway. To have put his judgment up against the superintendent's would have brought about his immediate discharge. The danger was not so obvious that a reasonably prudent man would refuse to obey the order of his superior, and for this reason we think the question of whether appellee assumed the risk was one for the jury.

Appellant next contends for a reversal of the judgment on the alleged ground that the court submitted the issues of negligence and the assumption of risk under erroneous declarations of law. After a very careful reading of the instructions submitting these issues, we find no error in them. We also think these issues were fairly submitted in the instructions given, and that the court properly refused to give such instructions as appellant asked touching these issues.

Appellant next contends for a reversal of the judgment because the court refused to submit the issues of whether it was released from liability on account of the writing signed by appellee and set out above. Appellant requested the submission of that issue to the jury in the following language:

"The court instructs the jury that if you find from the evidence that, after the plaintiff was injured, he and the defendant entered into a contract fully releasing the defendant from all damages resulting from such accident, in consideration of which the defendant agreed to pay all expenses incident to his recovery and to pay him one-half wages during such time as he was recovering, and if you find that the defendant has performed and stands ready to perform all the terms of said release contract, then your verdict will be for the defendant."

The court correctly refused to give the instruction for several reasons, the main one being that appellant failed to introduce any evidence to the effect that he paid appellee one-half his wages during the entire time he was unable to do constant physical labor. The undisputed testimony is that it refused to pay him one-half time after he refused to submit to an operation, and that at the time he refused to submit to an operation he had not entirely recovered.

Appellant's next and last contention for a reversal of the judgment is that the court refused to give its requested instruction number 8, in words as follows:

"The court instructs the jury that it was the duty of the plaintiff to reduce or minimize the injury and damages sustained by him; and if you find from the evidence that his injury produced hernia and that the only certain and known cure for hernia is an operation and that said operation is not attended with any serious danger nor excessive pain, and that his physicians advised such operation, and the defendant offered to stand all expenses incident to such operation and to pay the plaintiff one-half of his regular wages during the time he lost in submitting to such operation and during his convalescence from such operation, then it was the duty of the plaintiff to submit to such operation, and he is not entitled to any damages for his continued suffering or for his continued earning capacity."

The cases cited by appellant in support of this instruction are to the effect that one must submit to an operation in order to minimize his damages provided the operation is not a dangerous one. The converse of the rule is, of course, true. If the operation is dangerous, one is not required to submit to it in order to minimize damages sustained by him through the negligence of an employer. In the instant case the operation suggested was a dangerous one.

No error appearing, the judgment is affirmed.

KIRBY and McHANEY, JJ., dissent.