NATIONAL REFINING COMPANY *v.* WREYFORD.

4-3530

Opinion delivered September 24, 1934.

*Owens & Ehrman,* for appellant.

*Alonzo D. Camp, Joe B. Norbury* and *Tom W. Campbell,* for appellee.

BUTLER, J. In April, 1932, M. W. Wreyford was, and had been for about two years preceding, in the service of the National Refining Company as a filling station manager at the company's filling station located at 23d and Arch streets in the city of Little Rock. It was his duty to sell gasoline and motor oil and to grease cars and keep the station clean. This was done under the supervision of a Mr. Crane, the assistant superintendent of stations, who from time to time would visit each station to observe the manner in which the business was being conducted and the stations maintained and to give such orders in relation to the conduct of the stations as occasion required. It was the duty of the station managers to obey these orders.

At the station in question the motor oil was kept in a back room which was floored with concrete, there being five barrels containing oil, which when full would weigh approximately 500 pounds each. On a morning in April, 1932, while moving the oil barrels, Wreyford fell to the floor and one of the barrels containing oil rolled upon him causing an injury, to recover damages for which this suit was instituted. Wreyford alleged that the injury was occasioned by the negligence of the master in requiring him, unaided, to move the barrels of oil. The answer denied the allegation of negligence and affirmed that the injury was occasioned by a risk ordinarily incident to the employment of Wreyford for which the company was in no wise responsible. At the conclusion of the testimony the court submitted the question of negligence of the company and the assumption of risk by Wreyford to the jury, overruling a motion by the defendant company for an instructed verdict. There was a verdict and judgment in favor of the plaintiff, the

correctness of which is challenged by this appeal on the ground that the court erred in refusing to direct a verdict in favor of the defendant as requested.

The appellant contends that the evidence fails to establish actionable negligence on its part, but that it shows that whatever injury Wreyford sustained was the result of a danger which was better known to him than to any one else; that it was not occasioned by any negligence of the master, but was one of the hazards incident to his employment.

The evidence most strongly tending to sustain the allegations of the complaint was the testimony of the appellee, Wreyford, which, briefly stated, is to the following effect: At the time of the accident appellee was a strong, able-bodied man weighing about 190 pounds, and had been in the service of the appellant for a little more than two years. He was familiar with the duties incident to the work in which he was engaged. He first testified, and so also did some witnesses called in his behalf, that the accident occurred on the morning of April 12, 1932, but, on being recalled at the request of the appellant and being shown reports signed by him on the 12th, 13th and 14th of April, 1932, he corrected his testimony as first given as to the date of the accident, stating that it occurred on the 15th of April, instead of the 12th. He stated that on this morning he discovered that some oil had leaked upon the floor of the room where the motor oil was stored; that he at once reported this fact by telephone to Mr. Crane, his immediate superior, requesting that the latter send some one to help him move the barrels in order to ascertain which one was leaking; that, instead of complying with his request, Crane said, "You can move those barrels." Witness replied, "I might can move them, but I would like to have some help," and Crane said "Go in there and move the barrels—find the one that's leaking and call me back so I can send the correct amount of cans out there to put the motor oil in—we haven't any more barrels." Appellee then proceeded to move the barrels. He moved four of them, each of which contained only a small amount of oil and found that none of them were leaking.

Notwithstanding this he undertook to move the fifth barrel, which he estimated to contain around 45 or 50 gallons, but which, when the oil was taken out and measured, was found to contain about 30 gallons. In this barrel a pump was installed, and appellee testified that, as he was moving the last barrel and had gotten it out where he thought he could handle it, and started to turn it, the pump attached to the barrel hit him on the leg, knocking him down, and the barrel then rolled or fell on top of him; that he was unable to arise without help and remained on the floor until some one moved the barrel and assisted him to get up.

There was no contention or evidence to the effect that the pumps were improperly installed or that Crane was informed by Wreyford of any particular amount of oil in any one of the barrels. The only information given Crane by Wreyford was that the oil was leaking on the floor of the storage room. Appellee stated that there were five or six gallons of oil wasted on the floor. From the last report of the oil on hand on the 14th of April, 1932, it appeared that there were only 132 gallons of oil in all five barrels.

Counsel for appellee contend that the questions raised by the pleadings were properly submitted to the jury, and were for it to consider under the rule announced in 18 R. C. L., p. 655, which has been approved by this court in *Choctaw O. & G. Ry. Co. v. Jones,* 77 Ark. 367, 92 S. W. 244; *Clark Lbr. Co. v. Northcutt,* 95 Ark. 291, 129 S. W. 88; *Dickinson v. Mooneyham,* 136 Ark. 606, 203 S. W. 840; *Griffin v. St. L. I. M. & S. R. Co.,* 121 Ark. 433, 181 S. W. 278; *Woodley Pet. Co. v. Willis,* 172 Ark. 671, 290 S. W. 953; *Owosso Mfg. Co. v. Drennan,* 182 Ark. 389, 31 S. W. (2d) 762; *Berry's Sons Co. v. Presnall,* 183 Ark. 125, 35 S. W. (2d) 83, and the recent case of *Chapman v. Henderson,* 188 Ark. 714, 67 S. W. (2d) 570. The rule involved in all these cases is that an element which may affect an employee's appreciation of the perils of his employment is a command by one in authority to do a particular act, or an assurance that such act may be performed without danger. This is on account of the relation existing between the

master and servant that the latter shall yield obedience to the former and may ordinarily assume that the command may be obeyed without danger, or may be relied upon as an assurance of safety. Especially is this true when the command is sudden and where the situation gives little time for reflection and deliberation. In this state of case the employee is justified in subordinating his own judgment to that of his superior, and, notwithstanding any misgivings and doubts on his part, may ordinarily rely on the advice or the assurance of safety of his superior. In cases of this sort the employee is not required to weigh the degree of danger and decide whether it is safe for him to act and, in a measure, he is relieved of the usual obligation to exercise ordinary caution in the performance of his work. In ordinary cases he may assume that the employer has superior knowledge and may rely thereon; especially so, when the act to be performed could be made safe by the exercise of special care on the part of the employer, which the employee may assume has been done. This rule is founded on the psychological truth that habits of obedience are formed by employees to a degree which often overrules independent thought and action, and thus deprives them of the exercise of intelligent foresight and prudence which would otherwise protect them. The rule, however, has application (as will be discovered by a review of the cases cited) where the superior who gives the command is present in person actually directing the performance of the work, or where the command is given with a degree of knowledge equal to that of the employee as to the situation and circumstances surrounding the performance of the act commanded. The question of assumption of risk of the danger arising from an act commanded by a superior, under the rule stated, is always under circumstances from which the jury might find that the command was negligence in that it directed the performance of an act which, from its very nature, or from the attendant situation and circumstances, might be reasonably apprehended as dangerous to the employee.

In the instant case, we perceive no evidence from which the danger of injury in obeying the command might have been reasonably anticipated by the superior. According to the appellee's testimony, he made no claim that he informed Crane that it was dangerous to move the barrels by himself, or that he so considered it. He gave Crane no information as to the approximate number of gallons of oil contained in any one of the five barrels, and it will be remembered that there were only 132 gallons in all five barrels. The only information given Crane was that the oil had leaked and covered the floor of the storage room, and this appears not to have been the cause of Wreyford's fall, but that the pump attached to the barrel came in contact with his leg as the barrel was being moved. It also appears that the purpose for which Crane's command was given—to discover from which barrel or barrels the leak was proceeding—had been accomplished when the first four barrels were moved and no leak was found. There was no necessity for any further movement of the barrels and the act of the appellee in moving the fifth barrel was purely voluntary. Crane was not present when the command was given to move the barrels. He was at a distance, being communicated with by telephone, and as Wreyford failed to apprise him of any particular reason for needing help, it was reasonable for him to assume that the movement of the barrels by Wreyford, unaided, might be accomplished with no particular danger, nor can we see where any danger would ordinarily result. Wreyford had complete knowledge of the situation and Crane did not. Under the circumstances it appears that the cause of appellee's fall was occasioned by no negligence of the employer, but was one of those dangers ordinarily attendant upon the performance of his work.

It follows from the views expressed that the judgment of the trial court must be reversed, and, as the cause appears to have been fully developed, the case is dismissed.