RICHARDSON v. HUITT.

5-3296                                                379 S. W. 2d 265

Opinion delivered June 1, 1964.

*Bernard Whetstone,* for appellant.

*McMath, Leatherman, Woods & Youngdahl, Huey & Rothwell,* for appellee.

SAM ROBINSON, Associate Justice. Appellant, Clifton Richardson, and appellee, Mark Wilson Huitt, age 40, are friends and neighbors. Huitt had a small tomato patch in Richardson's back yard. They live in Warren, where Huitt is a member of the police department. Richardson has two pecan trees in his yard. In November, 1962, he asked Huitt to thrash one of the trees and offered to pay him for doing it. Huitt agreed, and a few days later went over to Richardson's place for that purpose. Mrs. Richardson advised Huitt not to climb the tree; the men, however, did not agree with her. Richardson produced a ladder so that Huitt could get up in the tree, and also a pole with which to do the thrashing. Huitt went up in the tree and proceeded to thrash out the pecans. After he had thrashed all the pecans he could with the pole, Richardson gave him a hammer weighing about six pounds which Huitt used to strike the limbs and thrash out more pecans. After Huitt had been using the hammer 10 or 15 minutes, the limb on which he was standing broke; he fell to the ground, and both ankles were broken.

In March, 1963, Huitt filed this suit against Richardson alleging:

"1. That the Defendant failed to inspect the tree which he asked the Plaintiff to climb;

2. That Defendant had knowledge of the fact that this particular pecan tree had dead limbs periodically and same should be removed from the tree;

3. That the Defendant was negligent in failing to warn the Plaintiff of the dead limbs in the said pecan tree;

4. That the Defendant was negligent in failing to provide this Plaintiff with a safe place in which to work.'' Later the complaint was amended to allege:

''The Defendant, Clifton Richardson, was negligent in failing to furnish the Plaintiff, Wilson Huitt, with safe appliances with which to perform the work Plaintiff was employed to perform.''

Richardson answered denying any negligence on his part and pleaded the affirmative defenses of contributory negligence and assumption of the risk. There was a trial to a jury which resulted in a verdict in favor of Huitt in the sum of $10,000.00. Richardson has appealed.

There are several points involved—the alleged negligence of appellant; the allegation of contributory negligence on the part of appellee, and the question of whether appellee assumed the risk. We reach only the issue of assumption of the risk, and we have concluded that the undisputed evidence shows that Huitt did assume the risk.

There is no evidence that appellant knew Huitt was standing on a dead limb. Huitt testified:

''Q. Was there anything wrong about that limb that you stood on?

A. Not that I know of.

Q. Was it a green limb?

A. When I climbed the tree, there wasn't no leaves on the tree. Nothing but pecans and little twigs. Wasn't no green limbs. One limb looked just as green to me as another.

Q. And this limb looked just as green as the others?

A. Just as green as the others.

Q. Looked just as sound as the others?

A. Just as sound as the others.

Q. No way you could look at it and told any different?

A. I imagine if a man got out there and took a little ax or something and hit on it, he might could have found the good ones from the dead ones.

Q. But you couldn't have told the difference by looking at them? Just looking at the tree, you couldn't tell?

A. No, sir.

Q. You couldn't tell by just standing under the tree, either, could you?

A. No, sir.

Q. Did you take an ax, or anything like that, and test this limb before you stood on it?

A. No, sir, I didn't.

Q. Why didn't you?

A. Because I didn't have no ax and I didn't think the limb was rotten. It was as green as the rest.

Q. After he handed the hammer up to you, did you take the hammer and beat the limb a little bit and see whether or not it was rotten?

A. No, sir.

Q. Why didn't you?

A. Because I thought the limb was as green as the rest of them. It was a 4 inch. I figured it would hold me up.

Q. In other words, at that time and nor now, did you see anything or observe anything that would have caused you to suspicion or believe or think that the limb might not be completely sound and green? Is that right?

A. To me, one limb up there looked just as sound as the other and that's why I stood on it.

Q. You thought the limb was safe, didn't you?

A. Yes, sir.

Q. Was there anything about the limb where anybody could have known that the limb was not good?

A. As I said a while ago, anybody could just walk up there and just look at it and it looked good. You might take an ax or hammer and hit it and tell the difference, but just walking up to the limb, you couldn't."

Appellee cites cases to the effect that it is the duty of the master to use ordinary care to furnish the servant a safe place to work, and, of course, the law is well established to that effect, but we know of no case where this rule has been extended to require the owner of pecan trees to furnish, for thrashing, trees having no dead limbs. And, furthermore, it has been held that the rule is not applicable where the employee assumes the risk.

The court said in *Gans Salvage Co.* v. *Byrnes*, 62 A. 155: "An employee who contracts for the performance of hazardous duties assumes such risks as are incident to their discharge from causes open or obvious, the dangerous character of which he had an opportunity to ascertain. . . . One who remains in a service which necessarily exposes him to hazardous risks from causes open and obvious, the dangerous character of which he knew or had an opportunity of knowing, must be considered as having assumed such risks, and, if injured in consequence thereof, has no claim against the employer . . . This doctrine, firmly grounded in the law of this state, in the law of England, and of probably every state in the federal Union, though usually stated as a general rule, constitutes, in reality, an exception to or qualification of the broad principle which requires the employer to use ordinary care to provide a reasonably safe place in which the servant may perform his work. It may be taken, then, as a postulate, that a servant, who, on entering into a contract of employment, knows of the dangers

of the premises or place of work, or by the use of ordinary care could see and understand them, assumes the risks which arise therefrom.''

Of course, the tree itself was not dead as shown by the fact that it bore pecans. True, it had a dead limb, but there may be a dead limb on any tree, and that is one of the hazards that appellee assumed when he undertook to thrash the tree. There is no contention that Richardson told Huitt to stand on the limb that broke. It is fairly inferrable from the evidence that appellee made his own selection of the limbs on which he would stand while thrashing the tree. It is not shown that any equipment furnished by Richardson was defective.

An employee assumes the risk of all dangers ordinarily incident to his employment. *Grayson-McLeod Lumber Co.* v. *Carter*, 76 Ark. 69, 88 S. W. 597; *Walther* v. *Cooley*, 224 Ark. 1027, 279 S. W. 2d 288. See also Ark. Digest, Master & Servant, §§ 206 and 213, and the cases therein cited. Climbing a pecan tree that is 60 feet in height to thrash it is a dangerous business. There is always danger of a limb breaking, and such danger is incidental to the undertaking of thrashing the tree. It is said in Labatt's Master and Servant, Vol. 3, P. 3130: ''A doctrine frequently recognized in the formal statements of the courts is that the principle which charges a servant with an assumption of the ordinary risk of an employment is applicable whether that employment may or may not be described as being inherently dangerous. It is, in fact, quite clear that any other position would be entirely illogical and unreasonable. Provided the risk from which the injury results is, as a matter of fact, obviously incident to the employment undertaken by the servant, it is impossible to argue, with any show of reason, that the essential elements from which an assumption of that risk is predicable are not present.''

From a long list of cited cases, Labatt's gives numerous illustrations, such as: ''There are many kinds of work in which danger is necessarily inherent, where precautions such as would insure safety to the workman

are either impossible, or would only be attainable at an expense altogether incommensurate with the end to be accomplished. In all such cases the workman must rely upon his own nerve and skill; and in the absence of express stipulation to the contrary the risk is held to be with him, and not with the employer.''

Appellee cites several cases holding that the servant did not assume the risk under the particular facts involved, but all of the cited cases are distinguishable on the facts from the case at bar.

When the established law of assumed risk is applied to the undisputed facts in this case, there can be no recovery.

Reversed and dismissed.

McFaddin, J. concurs.

Johnson, J. dissents.

Ed. F. McFaddin, Associate Justice (concurring).

I concur in the result reached by the Majority because I am of the opinion that there is no evidence of any negligence against the appellant Richardson. I rest my decision entirely on the absence of negligence.

Jim Johnson, Associate Justice (dissenting). I do not agree with the majority view. The theory upon which the majority opinion is bottomed might reasonably be applicable to a professional tree surgeon or one trained or experienced in the art of pecan threshing, but the logic in applying the theory to this policeman neighbor completely escapes me. I believe the majority have clearly usurped the jury function in this case by deciding that there was no question for the jury. Review of the testimony raises the question whether appellee could assume the risk when ordered by appellant to remain in the tree and try to knock down pecans with a sledge hammer. The majority took the license to infer from the evidence that appellee made his own selection of the limbs on which he would stand while thrashing the tree. It can just as logically be inferred from the evidence that had the six-

pound sledge hammer furnished appellee by appellant as the tool to do the job for which he was employed not been so heavy as to require the use of both hands, one of appellee's hands could have been free to hold on to another limb or to the tree, thus avoiding or minimizing his injury. Appellee's testimony is as follows:

. . . "We started back and he said, 'Well, we'd just as well go on and get the ladder and this bamboo pole and get those pecans,' and I said, 'Yes, sir'. So, out the door Mr. Clif went and I was behind him. He walked out to his garage and got his step ladder—a 10 foot step ladder—and he got this big long bamboo pole and brought this pole and step ladder up to the tree and put it up there. He said, 'OK, there's the step ladder. Go up there and shake them'. When I got up there, he handed me the pole. He said, 'Go up there and shake around the tree and try to get the top.' He said, 'I've done got the bottom.' So, I did. I went up there and I started thrashing the pecans with that pole the best I knew how. I shook them there for a while and tried to rattle those pecans and in a little while I said, 'Mr. Clif, I've done all I can do. *I'd just as well come down,'* and he said, *'No, I've got one more thing I want you to do,* Wilson,' I said, 'What's that, Mr. Clif?' He said, 'I've got a bolting ax out here and I'll send it up to you and you hit those limbs with that bolting ax and jar those pecans up at the top of that tree.' So, he went and got the ax and got him a nylon string or rope and he said, 'Let the pole down.' He tied the string to the pole and said, 'Pull it up.' So, I pulled it up—pulled the sledge hammer up and I was standing on a limb about 3 or 4 inches through and he said, 'Hit those limbs with that.' So, I took both hands—I had to use both hands to hit those limbs with that 6 pound hammer—and jarred the tree and all of a sudden this limb broke and I hit the ground. I had 2 broken ankles and I laid over on the ground.

\* \* \*

"The only thing that Mrs. Ruth Richardson said to me was when Mr. Clif said, 'Let's go get those pecans,' she said, 'Wilson, don't climb that tree. You might get

hurt.' Going out the little hallway in the back, Mr. Clif turned around and said these words, he said, 'Nobody is going to get hurt.' "

One of a number of cases which are here relevant is *Griffin* v. *St. Louis, I. M. & S. Ry. Co.,* 121 Ark. 433, 181 S. W. 278, in which it was said:

" (2) It is insisted by counsel for appellee that under the undisputed testimony appellant must be deemed to have assumed the risk. We do not think, however, that it can be said as a *matter of law* that the risk was assumed merely because appellant, under the circumstances, proceeded with the work. He was acting under the immediate commands of the foreman and had the right to some extent to rely upon the foreman's superior knowledge. It was a *question for the jury* to determine whether or not appellant appreciated the danger of attempting to handle the piece of timber with an insufficient force of men.

. . . "In the present case the servant was acting under the immediate direction of a foreman, and, as stated before, he had a right to rely upon the foreman's superior knowledge and did not assume the risk unless the jury found that he *appreciated* the danger and *voluntarily proceeded* with the work in the face of it.

. . . "The testimony is, however, that the foreman directed appellant and his co-laborers to handle the piece of timber in the particular way mentioned; that is to say, with two of them at one end, and in doing the work they were following the explicit directions of the foreman. Therefore, we must come back to the proposition that under the proof in this case, before the risk of the danger was assumed, it must be found that appellant appreciated it."

This principle has been reiterated again and again by this court. In *Standard Oil Co. of Louisiana* v. *Webb,* 194 Ark. 569, 108 S. W. 2d 1086, it was stated thusly:

"The facts bring this case within the general rule that the question of assumption of risk is generally one

for the jury, and *always so* where a servant is acting in obedience to the orders of a superior unless it appears that he both knew and appreciated the danger in obeying such order; or, where such danger is so obvious that a reasonably prudent person would refuse to obey . . . The court correctly submitted the defense of assumed risk to the jury and its verdict against the contention of appellant has some substantial evidence to support it." [Emphasis mine.]

In *Woodley Petroleum Co.* v. *Willis,* 172 Ark. 671, 290 S. W. 953, after restating the above-quoted rule, was said:

. . . "We cannot say as a matter of law, in the instant case, that appellee knew of the danger, or that the danger was so obvious or patent that he should have known it. The evidence shows that he exposed himself to the danger in an effort to obey the order of his foreman. The order of the foreman carried an implied assurance that appellee could perform the work without danger to life or limb."

*James B. Berry's Sons Co.* v. *Presnall,* 183 Ark. 125, 35 S. W. 2d 83, also reiterates the above, and states:

"To have put his judgment up against the superintendent's would have brought about his immediate discharge. The danger was not so obvious that a reasonably prudent man would refuse to obey the order of his superior, and for this reason we think the question of whether appellee assumed the risk was one for the jury." And in *Chapman* v. *Henderson,* 188 Ark. 714, 67 S. W. 2d 570, this court said:

"The tendency of modern cases is to permit a recovery, unless the employer's direction calls for nothing less than recklessness on the part of the employee, leaving no ground for difference of opinions as to the perils of acting pursuant thereto. *Owosso Mfg. Co.* v. *Drennan,* 182 Ark. 389, 31 S. W. 2d 762."

In *Neely* v. *Goldberg,* 195 Ark. 790, 114 S. W. 2d 455, the court explained that there are three exceptions to the rule that an employee assumes the risks ordinarily inci-

dent to his employment, the second exception being, "the servant does not assume the risk of injury incident to his employment when the work is being done under the immediate direction and control of the employer," and went on to say, "[a]n employer cannot lull his employee into a sense of security by an assurance of safety and then escape liability for injuries resulting to the employee in relying on this assurance. In such cases, the employee does not assume the risk."

Thus the questions here for the jury to decide were whether appellee (1) knew there was danger, (2) appreciated the danger in obeying appellant's order, (3) had some right to rely on appellant's superior knowledge or reassurances that there was no danger. Appellee had been in the tree under the personal direction of appellant for some time poking pecans with the bamboo pole, when appellant ordered him to shake the tree with the sledge hammer. This is when the limb and appellee parted company with the tree. Prior to that there had been no sign of danger—the limb had apparently seemed and held firm. The trial court correctly submitted the matter of assumption of the risk to the jury.

For the reasons stated, I respectfully dissent.