**Anthony RINI, Plaintiff,**

v.

**OAKLAWN JOCKEY CLUB, Defendant.**

No. 86–6010.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

May 29, 1987.

James Bruce McMath, The McMath Law Firm, P.A., Little Rock, Ark., for plaintiff.

James M. Simpson, Friday, Eldredge & Clark, Little Rock, Ark., for defendant.

MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

This is an action against the owners and operators of a racetrack for negligently creating and maintaining two hazards that resulted in serious and permanent injuries to plaintiff, who was a jockey until the accident complained of. Plaintiff claimed, and he adduced evidence to show, that while he was schooling a young horse he was injured due to a hazardous traffic pat-

tern near the starting gate and a dangerous rail in which he became entangled when he fell. Plaintiff testified that his horse wheeled into the rail because it was spooked by a horse entering the track as plaintiff left the gate, and he asserts that this would not have occurred if defendant's track had not been designed so as to allow for this kind of traffic pattern during schooling hours. Plaintiff also testified, and there was corroborating evidence, that his injury would not have occurred if the Fontana safety rail had been employed, that is, if the racetrack rail had been covered with a flat expanse of flexible surface that would have prevented his contact with the posts of the rail when he fell. Defendant, for its part, introduced evidence tending to show that horses spook and wheel for reasons sometimes impossible to know; that, at any rate, plaintiff's horse wheeled for a reason wholly unrelated to the traffic pattern at its track; that its racetrack was in no manner negligently arranged; and that the Fontana safety rail would not have prevented the relevant accident and was, in any case, more generally dangerous than the rail that was in place. Defendant also presented evidence tending to show that plaintiff knew of the hazards of which he complained and that he had lost his stirrups while riding.

There was a great deal of evidence in the case produced over a period of three and a half days, but its main features, so far as it bears on the material issues involved, are summarized above. After both sides rested, the court was of the view that a submissible case had been made on the negligence, if any, of both the plaintiff and defendant. The court also believed that, on the evidence presented, reasonable people could find that the plaintiff had assumed the risks created by defendant's negligence, if any, and therefore proposed to instruct the jury as follows:

> The plaintiff claims in this case that defendant's negligence created and maintained two hazards that proximately caused his injury: one, unsafe congestion around the schooling gate; and two, an unsafe rail. If you find that defendant was in fact negligent in either of these

two respects, then it will be necessary for you to inquire whether the plaintiff assumed the risk of these hazards. In order for him to have done so, he must have known of these specific hazards and resolved that the defendant owed him no duty of due care with respect to them. In other words, in order to assume the risk of another's negligence, a person must consent to it and not merely acquiesce in it. You will have to decide this issue on the basis of all the evidence, both direct and circumstantial, and your own common knowledge.

To this instruction plaintiff excepted, on the ground that assumption of the risk, unless it is express, is no longer a defense to an action for negligence under the law of Arkansas.

### I.

In support of its assertion that the defense of assumption of the risk has disappeared in Arkansas, plaintiff relies heavily on Ark.Stat.Ann. § 27–1763 (1979), which is Arkansas's comparative fault statute. That statute defines fault as "any act, omission, conduct, *risk assumed,* breach of warranty or breach of any legal duty *which is a proximate cause of any damages sustained ..."* (emphasis supplied). Plaintiff maintains that this statute has absorbed the idea of assumption of the risk into the general idea of fault, and that that defense therefore no longer continues to have a separate and distinct existence.

This analysis has more than a little to recommend it; but the court believes, on reflection, and with great respect for plaintiff's able and energetic counsel, that that interpretation is too facile. What it ignores is the plain fact that an assumption of a risk is not by any means always a matter of fault. For an assumption of the risk to be merged into fault, it must, as a logical matter, itself be faulty. The logic of this is irresistible. Many risks, however, are obviously assumed without fault; otherwise all capitalists, entrepreneurs, indeed all creditors, would have to be regarded as acting in a faulty manner, for they all assume the risk that their investments will

fail or that their debtors will become insolvent.

The statute therefore, of necessity, means something other than what the plaintiff asserts. The court believes that its true construction can be sought in the experience that Arkansas courts had had with the idea of assumption of the risk before the passage, in 1975, of the relevant portion of the statute. Before then, Arkansas courts had employed Arkansas Model Instruction (AMI) 612, which provided that a plaintiff was barred if he voluntarily and knowingly exposed himself to a dangerous situation of which he knew and which proximately caused his injury. This was a correct statement of the law of Arkansas as it had developed prior to the promulgation of this instruction. *See generally*, on this development, Dobbs, *Act 191, Comparative Negligence*, 9 Ark.L.Rev. 357, 373–78 (1955). The Arkansas cases had made no essential distinction between contributory negligence and assumption of the risk, but this had caused little difficulty because both had been, before 1955, a complete bar to the plaintiff's recovery.

What the statutory provision was aimed at, then, was eliminating assumption of the risk as a complete defense when that phrase was used as no more than another name for contributory negligence. This was in keeping with the legislative decision to abolish the bar to recovery which the doctrine of contributory negligence had previously provided. But this statute in no way reaches that version of the doctrine of assumption of the risk which teaches that a complete bar to a plaintiff's recovery is available to a defendant who can show that the plaintiff consented to defendant's negligence in the fullest sense, that is, that he waived the duty that the defendant would otherwise have to behave towards him in a non-negligent way. This idea, sometimes called primary assumption of the risk, is not radical or remarkable, and has found expression through the centuries in the maxim *volenti non fit injuria:* A wrong cannot be done to one who consents. It surely cannot be argued that the Arkansas legislature intended to reject the notion that one can expressly waive a known

right; and, if that is so, it seems wrong to assume that the legislature intended to eliminate implied consent as a defense. Of course, as a sovereign power, the legislature may certainly do such a thing. But it needs to speak more clearly on this subject than it has before this court will hold that it has abandoned consent as a fundamental principle of social ordering. Implied consent, like implied contract, is an idea by which all of us govern our daily lives, and its abandonment will require the plainest and most express words. The Supreme Court of Arkansas has many times indicated its approval of the principle of implied waiver and the analogous idea of implied contract. *See, e.g., National Investors Life Ins. Co. v. Tudor*, 264 Ark. 361, 571 S.W.2d 585 (1978) (in banc) (implied waiver). Quite recently, in fact, the court wrote that an implied contract is one "inferred from the acts of the parties," and it indicated its acceptance of the entirely orthodox view that "a contract implied in fact ... derives from the 'presumed' intention of the parties as indicated by their conduct." *Steed v. Busby*, 268 Ark. 1, 7, 593 S.W.2d 34, 38 (1980). It is no great step from these cases to allow for the implication of consent from conduct.

Nor is *Rogers v. Kelly*, 284 Ark. 50, 679 S.W.2d 184 (1984), a case which plaintiff strenuously urges on the court, contrary to this proposed construction of the pertinent statute. In that case, the Supreme Court of Arkansas held, four to three, that the facts adduced at trial had not presented a case of assumption of the risk; and it quoted Prosser and Keeton, *The Law of Torts* 485 (5th ed. 1984), to the effect that the plaintiff in *Rogers* could "not by any stretch of the imagination be found to consent that [the defendants] shall not use due care.... On the contrary, he is insisting that they shall." *Rogers*, 284 Ark. at 52, 679 S.W.2d 184. The Supreme Court of Arkansas therefore recognized the continued vitality of the idea that consent is a defense to an action in tort, though it held that a submissible case on that issue had not been made out in the particular case before it. The court went on to say, it is

true, that AMI 612, alluded to above, ought to "be used only in exceptional circumstances, if indeed it is ever proper now that assumption of risk is not a complete defense." *Id.* But the court in this passage must be taken to mean that the idea of assumption of the risk, when it amounts to no more than a clone of contributory negligence, is no longer a bar under Arkansas law. That much this court concedes. It is crucial to see that AMI 612, against the use of which the *Rogers* court cautioned, and which this court does not propose to use, did not directly involve or even remotely implicate the idea of consent. That instruction did not invite the jury to conclude, if it believed that the evidence warranted it, that the plaintiff had consented to defendant's negligence. The rejection of AMI 612 therefore in no way indicates an intent to reject the idea that implied consent is a defense to an action in tort.

It ought to be plain that a great deal of confusion has been created by the use of the phrase "assumption of the risk" as a label for two different ideas: One, that the plaintiff was negligent; and, two, that the plaintiff consented to the act or condition that caused his injury. On this double duty, *see generally*, James, *Assumption of Risk*, 61 Yale L.J. 141 (1952). The first manifestation of this doctrine is quite properly included by the Arkansas legislature in the comparative fault statute. The second, as the court has been at some pains to say, is not: Consent is not a fault, as the court noted above, unlike the other items in the list in the comparative fault statute. Nor, moreover, can consent be, as required by the statute, "a proximate cause of ... damages." The injury complained of here is not a result of plaintiff's consent, if any, to defendant's negligence; it would have occurred even if plaintiff had merely acquiesced in defendant's negligence, if any. In other words, if the jury finds, as it is entitled to under the evidence, that plaintiff consented to defendant's negligence, it is certainly true that the plaintiff will not be entitled to recover. But this will not be because he caused his own injury; it will be because the defendant owed him no duty. On the other hand, if the jury believes, as it

is entitled to, that the plaintiff was negligent in proceeding in the face of known hazards, and that his negligence was greater than the defendant's, then he likewise will not be entitled to recover. But in this case he will lose, even though the defendant owed him a duty, because his negligence contributed to, that is, caused, his own injury.

Finally, the court will make some observations on evidentiary matters. The question of whether plaintiff consented to defendant's negligence necessarily involves the jury in a determination of plaintiff's state of mind. While this is a difficult inquiry, it is exactly the kind of inquiry made every day by juries in all sorts of civil and criminal cases. It is a question of fact on which the jury is more than competent to pass, and in doing so it is, of course, as the court will instruct, entitled to rely on the experience that it has gained in the ordinary affairs of life. Especially relevant will be the complaints, if any, that plaintiff made about such hazards as he was aware of, though even this will not necessarily conclude the matter one way or the other. On the question of whether the plaintiff acted negligently in proceeding in the face of a known hazard, the jury is entitled to take into account the amount of remuneration received by the plaintiff in addition to the extent of his appreciation of the danger created by the hazard. The court will not instruct the jury that if it believes that the plaintiff assumed the risk, but did so negligently because a reasonable person would believe that the benefits to him for doing so were outweighed by the risks, then he may nevertheless recover if his negligence was less than the defendant's. That would lead to the anomalous conclusion that a person negligently assuming a risk might not be barred, but a non-negligent assumer of the risk would be. On this rather recondite puzzle, *see* Prosser and Keeton, *The Law of Torts* 497–98 (5th ed. 1984).

## II.

The jury, having been instructed on both comparative negligence and assumption of

the risk, in accordance with the court's opinion above, returned a verdict to the effect that the defendant was negligent, that the plaintiff was more negligent than the defendant, and that the plaintiff had assumed the risk. Plaintiff now moves this court for Judgment N.O.V. and for a new trial, claiming that the court erred in instructing the jury on the concept of assumption of the risk. As further grounds for his motion, plaintiff asserts that the jury's finding that plaintiff was more negligent than the defendant is against the preponderance of the evidence, is clearly erroneous, and is either the result of confusion arising from the court's instruction on assumption of the risk or represents a compromise verdict.

Plaintiff's motion for Judgment N.O.V. is denied because he did not make a motion for directed verdict as required by Fed.R. Civ.P. 50(b). *See Hubbard v. White*, 755 F.2d 692 (8th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Myers v. Norfolk Livestock Market, Inc.*, 696 F.2d 555 (8th Cir.1982).

Of the various matters that plaintiff alleged against the verdict, only one, that it is clearly erroneous, even colorably raises a ground for a new trial under Fed.R.Civ.P. 59(a). It is well settled that a verdict may be set aside if the trial judge determines that it is against the clear weight of the evidence. *See, e.g., Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291 (8th Cir. 1982). Of course, in deciding whether the verdict is against the clear weight of the evidence, "the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has." *Ryan by Ryan v. McDonough Power Equipment, Inc.*, 734 F.2d 385, 387 (8th Cir.1984).

■ The jury finding challenged here, namely that the plaintiff was more negligent than the defendant, is not against the great weight of the evidence. The jury was entitled to find that the plaintiff was negligent in proceeding in the face of dangers of which he knew, or that he was negligently riding his horse, and thereby contributed to his own injury. It was also entitled to believe that plaintiff had assumed the risk. The court will not substitute its judgment for the jury's.

It is perhaps right to note in closing that any error committed by the court in instructing the jury on assumption of the risk was rendered harmless by the jury's determination that plaintiff's action was barred by his own negligence. The error, if any, was cured by verdict.

## ORDER

NOW on this 27th day of May, 1987, come on for hearing plaintiff's Motions for a New Trial and for Judgment N.O.V.;

AND IT APPEARING to the court that the same ought to be denied for the reasons stated in the accompanying Opinion;

It is therefore ORDERED that the same be, and hereby are, denied.