Anthony RINI, Appellant,

v.

OAKLAWN JOCKEY CLUB, Appellee.

No. 87–1779.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1988.

Decided Sept. 27, 1988.

Rehearing and Rehearing En Banc
Denied Nov. 18, 1988.

James B. McMath, Little Rock, Ark., for appellant.

Glenn W. Jones, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit

Judge, and HANSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Anthony Rini appeals from a final judgment entered upon a jury verdict in favor of appellee Oaklawn Jockey Club (Oaklawn) in his personal injuries suit. *Rini v. Oaklawn Jockey Club*, 662 F.Supp. 569 (W.D.Ark.1987). For reversal, Rini argues that the district court erred in instructing the jury on assumption of risk because that defense has been abolished in Arkansas through the adoption of comparative fault. For the reasons discussed below, we reverse.

Rini, a professional jockey with approximately twenty-three years experience, was injured while training a horse during a morning starting practice at Oaklawn Race Track in Hot Springs, Arkansas. Morning starting practice occurs at most horse racing tracks and is a process of qualifying a young horse making its first appearance at the track to start in a race. During the practice, the horse and jockey are started from the starting gate as if in an actual race.

On the morning of the accident, Rini's horse left the starting gate, spooked and attempted to duck or turn and run the wrong way around the race track. Rini attempted to restrain the horse, which then saddled sideways and struck the inside rail of the track. Rini was thrown off the horse into the rail and fell to the infield. He sustained serious and permanently disabling injuries to his spine, shoulder, and ribs, resulting in paralysis of his left arm.

Rini brought suit against Oaklawn claiming that they had been negligent in creating and maintaining two hazards—a dangerous traffic pattern near the starting gate and a dangerous rail. Rini claimed that the design of the track caused a hazardous traffic pattern near the starting gate because the track has only one starting gate whereas most tracks have two, and the principal entrances to and exits from the track are near the gate so that many horses go the wrong way around the track in front of the gate in order to back track to the exit location. Additionally, horses may enter the track through a ramp immediately in front of the starting area but out of sight of the gate. Rini asserted that these design defects caused a high level of traffic in the starting gate area so that there was a great potential for horses entering or exiting the track to "spook" horses coming out of the starting gate. Several experts testified that the design of the track was hazardous, and other witnesses testified that many persons in the racing industry, including Oaklawn itself, recognized the defect in the design. Rini also alleged that Oaklawn had been negligent in failing to install a "Fontana Safety Rail," a special type of rail designed to render the inside rail less hazardous to jockeys who are thrown from their mounts.

Oaklawn responded with evidence that Rini had never complained about the traffic pattern at Oaklawn, that any design defects in the track were not the proximate cause of Rini's injury, and that Oaklawn's rail was as safe or safer than the "Fontana Safety Rail."

At the close of the evidence, the district court proposed to instruct the jury on comparative fault under the Arkansas comparative fault statute, Ark.Code Ann. § 16–64–122 (1987). The district court also proposed an additional instruction on assumption of the risk as follows:

The plaintiff claims in this case that defendant's negligence created and maintained two hazards which proximately caused his injury: one, unsafe congestion around the schooling gate; and two, an unsafe rail. If you find that the defendant was in fact negligent in either of these two respects, then it will be necessary for you to inquire whether the plaintiff assumed the risk of these hazards. In order for him to have done so, he must have known of these specific hazards and resolved that the defendant owed him no duty of due care with respect to them. In other words, in order

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

to assume the risk of another's negligence, a person must consent to it and not merely acquiesce in it. You will have to decide this issue on the basis of all the evidence, both direct and circumstantial, and your own common knowledge.

Rini objected to this instruction on the ground that implied assumption of the risk is no longer a defense to an action for negligence in Arkansas due to the adoption of comparative fault. The district court overruled this objection and gave the instruction. The jury returned a verdict finding that Rini had been 65 percent negligent, that Oaklawn had been 35 percent negligent, and that Rini had assumed the risk. The district court denied Rini's post-trial motion for JNOV or a new trial and this appeal followed.

The sole issue on appeal is the extent to which the defense of assumption of risk survives the adoption of comparative fault in Arkansas.

The general principle of assumption of risk is that "[a] plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Restatement (Second) of Torts § 496A (1965). The origins of the doctrine may be traced to the industrial revolution in the context of the master-servant relationship. As Justice Black explained:

Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period [the industrial revolution] to insulate the employer as much as possible from bearing the "human overhead" which is an inevitable part of the cost—to someone— of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry.

Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 58–59, 63 S.Ct. 444, 447, 87 L.Ed. 610 (1943) (Tiller) (footnotes omitted). Over the years the doctrine spread to nearly every area of negligence law and "reflects the individualism of the common law." Rutter v. Northeastern Beaver County School District, 496 Pa. 590, 437 A.2d 1198, 1206 (1981) (plurality).

At least two things are commonly said about the doctrine of assumption of risk. The first is that it is a frequent cause of confusion. See, e.g., Tiller, 318 U.S. at 68, 63 S.Ct. at 452 (Frankfurter, J., concurring) ("The phrase 'assumption of risk' is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas."); W.P. Keeton, D. Dobbs, R.E. Keeton, & D. Owen, Prosser & Keeton on Torts § 68, at 480 (5th ed. 1984) (hereinafter Prosser & Keeton on Torts) (assumption of risk "has been surrounded by much confusion"); Mansfield, Informed Choice in the Law of Torts, 22 La.L.Rev. 17, 17 (1961) (assumption of risk "more difficult to understand and apply than almost any other [doctrine] in the law of torts"). The second thing that is said of assumption of risk is that it is not well liked, particularly in recent times. See, e.g., Blackburn v. Dorta, 348 So.2d 287, 289 (Fla.1977) (Blackburn) ("assumption of risk is not a favored defense"); ITT Rayonier, Inc. v. Puget Sound Freight Lines, 44 Wash.App. 368, 722 P.2d 1310, 1314 (1986) (ITT Rayonier) ("Assumption of the risk has experienced a slow but steady fall from grace."). A number of commentators have advocated the abolition of the defense,[1] and a majority of the states have curtailed the doctrine to some extent.[2] A great deal of the confu-

---

**1.** Bohlen, *Voluntary Assumption of Risk,* 20 Harv.L.Rev. 14 (1906); James, *Assumption of Risk: Unhappy Reincarnation,* 78 Yale L.J. 185 (1968); Wade, *The Place of Assumption of Risk in the Law of Negligence,* 22 La.L.Rev. 5 (1961); Note, *Contributory Negligence and Assumption*

*of Risk—The Case for Their Merger,* 56 Minn.L. Rev. 47 (1971).

**2.** *See Leavitt v. Gillaspie,* 443 P.2d 61 (Alaska 1968); *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Brown v. Kreuser,* 38 Colo.App. 554, 560 P.2d 105 (1977);

sion and distaste surrounding the doctrine stems from the fact that the term "assumption of risk" has several different meanings and is often applied without recognizing these different meanings.

In its original meaning, assumption of risk was not a separate defense. Rather, the term was simply a way of expressing the rule that an employer owed a duty to provide a reasonably safe place to work, but that if the employer discharged that duty he or she was not liable; the employee "assumed the risk" of any damages caused by the *inherent* risks of the job. Accordingly, if the employee were able to show that the injury was "caused by a risk created by the master's breach of duty to furnish a reasonably safe place to work, assumption of the risk in the primary sense necessarily was negated." *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 93 (1959) (discussing historical development of assumption of risk).

Later, however, the legal concept arose that the employer should nonetheless prevail because the employee voluntarily exposed himself or herself to a risk negligently created by the employer. This doctrine was also labeled assumption of the risk, and in this way "two utterly distinct thoughts bore the same label with inevitable confusion." *Id.* Thus, assumption

of risk in its primary sense was nothing more than a means of describing the absence of a duty on the employer to protect the employee from inherent risks, while assumption of risk in its secondary sense represented an affirmative defense that the employee should not be able to recover where he or she voluntarily proceeded with full awareness of the risk which caused the injury.

Next, a distinction arose within the category of secondary assumption of risk between "reasonable" and "unreasonable" assumption of risk. This distinction focused on the plaintiff's conduct in assuming the risk, characterizing it as either reasonable under the circumstances or as unreasonable where, for example, the danger is "out of all proportion to the advantage which [the plaintiff] is seeking to obtain." Prosser & Keeton on Torts § 68, at 481.

A final confusion was engendered by lending the label of assumption of risk to essentially an area of contract waiver law. Where an employee expressly contracted to relieve the employer of liability for injuries caused by a certain risk, the employee was said to have "expressly assumed the risk." In summary, then, there are four types of assumption of risk which, for (relative) simplicity, we shall label Types 1-4:

*Wendland v. Ridgefield Constr. Servs.*, 190 Conn. 791, 462 A.2d 1043 (1983); *Frelick v. Homeopathic Hosp. Ass'n*, 51 Del. 568, 150 A.2d 17 (1959); *Scoggins v. Jude*, 419 A.2d 999 (D.C. 1980); *Blackburn v. Dorta*, 348 So.2d 287 (Fla. 1977); *Burrows v. Hawaiian Trust Co.*, 49 Haw. 351, 417 P.2d 816 (1966); *Fawcett v. Irby*, 92 Idaho 48, 436 P.2d 714 (1968); *Duffy v. Midlothian Country Club*, 135 Ill.App.3d 429, 90 Ill. Dec. 237, 481 N.E.2d 1037 (1985); *Rosenau v. City of Estherville*, 199 N.W.2d 125 (Iowa 1972); *Smith v. Blakey*, 213 Kan. 91, 515 P.2d 1062 (1973); *Parker v. Redden*, 421 S.W.2d 586 (Ky. 1967); *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La.1988); *Wilson v. Gordon*, 354 A.2d 398 (Me.1976); *Baltimore County v. State ex rel. Keenan*, 232 Md. 350, 193 A.2d 30 (1963); *Felgner v. Anderson*, 375 Mich. 23, 133 N.W.2d 136 (1965); *Iepson v. Noren*, 308 N.W.2d 812 (Minn. 1981); *Braswell v. Economy Supply Co.*, 281 So.2d 669 (Miss.1973); *Kopischke v. First Continental Corp.*, 187 Mont. 471, 610 P.2d 668 (1980); *Mizushima v. Sunset Ranch, Inc.*, 737 P.2d 1158 (Nev.1987); *Bolduc v. Crain*, 104 N.H. 163, 181 A.2d 641 (1962); *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959); *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1971); *Arbegast v. Board of Educ.*, 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985); *McWilliams v. Parham*, 269 N.C. 162, 152 S.E.2d 117 (1967); *Wentz v. Deseth*, 221 N.W.2d 101 (N.D.1974); *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780 (1983); *Minor v. Zidell Trust*, 618 P.2d 392 (Okla.1980); *Ritter v. Beals*, 225 Or. 504, 358 P.2d 1080 (1961); *Rutter v. Northeastern Beaver County School Dist.*, 496 Pa. 590, 437 A.2d 1198 (1981) (plurality); *Farley v. MM Cattle Co.*, 529 S.W.2d 751 (Tex.1975); *Meese v. Brigham Young Univ.*, 639 P.2d 720 (Utah 1981); *Sunday v. Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978); *Lyons v. Redding Constr. Co.*, 83 Wash.2d 86, 515 P.2d 821 (1973); *McConville v. State Farm Mut. Auto. Ins. Co.*, 15 Wis.2d 374, 113 N.W.2d 14 (1962); *Brittain v. Booth*, 601 P.2d 532 (Wyo.1979); *see also Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 72, 63 S.Ct. 444, 453, 87 L.Ed. 610 (1943) (Frankfurter, J., concurring) ("Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded.").

TYPE 1: *Express Assumption of Risk*—where the plaintiff has given his or her express consent in advance to relieve the defendant of an obligation to exercise care for the plaintiff's protection. Restatement (Second) of Torts § 496A comment c, 1; *Duffy v. Midlothian Country Club,* 135 Ill.App.3d 429, 90 Ill.Dec. 237, 241, 481 N.E.2d 1037, 1041 (1985); *Arbegast v. Board of Education,* 65 N.Y.2d 161, 490 N.Y.S.2d 751, 480 N.E.2d 365 (1985); *Malinder v. Jenkins Elevator & Machine Co.,* 371 Pa.Super. 414, 538 A.2d 509, 518 (1988) (Olszewski, J., dissenting) (*Malinder*). This type of assumption of risk is essentially a matter of contract law.

TYPE 2: *Implied Primary Assumption of Risk*—where the plaintiff has assumed known risks *inherent* in a particular activity or situation. The assumed risks are not those created by the defendant's negligence, but rather by the nature of the activity itself. "Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect [the spectator] from being hit by the ball." Restatement (Second) of Torts § 496A comment c, 2. The spectator is not, however, regarded as having consented that the bleachers in the park may be negligently constructed. *See* F. Harper, F. James & O. Gray, The Law of Torts § 21.0 (2d ed. Supp.1987). As such it is said that implied primary assumption of risk is simply another way of stating that the defendant owed no duty to protect the plaintiff from that risk. *Id.* (2d ed. 1986); *Mima v. City of Akron,* 31 Ohio App.3d 124, 508 N.E.2d 974, 975 (1986); Prosser & Keeton on Torts § 68, at 496.

TYPE 3: *Implied Secondary Reasonable Assumption of Risk*—where the plaintiff is aware of a risk created by the negligence of the defendant and proceeds or continues voluntarily to encounter it and the plaintiff's conduct in so doing is entirely reasonable in that the risk is small or the plaintiff proceeds with all due caution. Restatement (Second) of Torts § 496A comment c, 3. *Segoviano v.*

*Housing Authority,* 143 Cal.App.3d 162, 191 Cal.Rptr. 578, 579 (1983); *Malinder,* 538 A.2d at 518 (Olszewski, J., dissenting); *ITT Rayonier,* 722 P.2d at 1315 n. 5. This type of assumption of risk is exemplified by the hypothetical situation in which, after a landlord has negligently permitted the tenant's premises to become highly flammable and a fire ensues, the tenant rushes into the premises to retrieve his or her infant child trapped within and is injured. *Blackburn,* 348 So.2d at 291.

TYPE 4: *Implied Secondary Unreasonable Assumption of Risk*—where the plaintiff voluntarily encounters a known risk created by the defendant but the plaintiff's conduct in so doing is unreasonable. Restatement (Second) of Torts § 496A comment c, 4. *Malinder,* 538 A.2d at 518 (Olszewski, J., dissenting); *ITT Rayonier,* 722 P.2d at 1315 n. 5. This type of assumption of risk can be illustrated by the hypothetical recited above with the alteration that the tenant rushes into the blazing premises to retrieve a favorite fedora. *Blackburn,* 348 So.2d at 291.

Type 4 assumption of risk presents special difficulties in its application because of the possibility that conduct constituting this type of assumption of risk may simultaneously amount to contributory negligence—a wholly separate doctrine whereby a plaintiff is denied recovery because the plaintiff's own negligence contributed to the injury. This area of overlap between assumption of risk and contributory negligence has been described as follows:

[T]he plaintiff's conduct in encountering a known risk may in itself be unreasonable, because the danger is out of all proportion to the advantage which [the plaintiff] is seeking to obtain.... In cases such as these, [the plaintiff's] conduct is a form of contributory negligence, in which the negligence consists in making the wrong choice and voluntarily encountering a known unreasonable risk. In such cases it is clear that the defenses of assumption of risk and contributory negligence overlap, and are as intersect-

ing circles, with a considerable area in common, where both exist and neither excludes the possibility of the other.

Prosser & Keeton on Torts § 68, at 481. In the past, this overlap was unimportant because, in practice, it did not matter whether the plaintiff's conduct was labeled as assumption of risk or contributory negligence; either defense would completely bar a plaintiff's recovery for negligence. With the adoption of comparative fault in Arkansas, and in other jurisdictions, however, contributory negligence is no longer an absolute bar to the plaintiff's recovery as long as the plaintiff's fault is less than that of the defendant. As a result, the same conduct by a plaintiff will be an absolute bar if viewed as assumption of risk but only a partial bar if considered contributory fault. This difficulty requires an analysis of the effect of the Arkansas comparative fault statute on the common law defense of assumption of risk.

The Arkansas comparative fault statute provides:

(a) In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

(b)(1) If the fault chargeable to a party claiming damages is of a lesser degree than the fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is entitled to recover the amount of his [or her] damages after they have been diminished in proportion to the degree of his [or her] own fault.

(2) If the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages,

then the claiming party is not entitled to recover such damages.

(c) The word "fault" as used in this section includes any act, omission, conduct, *risk assumed,* breach of warranty, or breach of any legal duty which is a proximate cause of any damages sustained by any party.

Ark.Code Ann. § 16–64–122 (1987) (emphasis added).[3] On its face, the statute purports to merge the defense of assumption of risk into the statutory comparative fault scheme. This has consistently been the view of the Arkansas courts. *Dawson v. Fulton,* 294 Ark. 624, 745 S.W.2d 617, 619 (1988) ("We no longer apply the assumption of risk doctrine, but permit the jury to compare negligence pursuant to Ark.Code Ann. § 16–64–122 (1987)."); *Wortman v. Shipman,* 293 Ark. 253, 256 n. 1, 737 S.W. 2d 438, 440 n. 1 (1987) (assumption of risk instruction "should be used only in exceptional circumstances, if indeed it is ever proper now that assumption of risk is not a complete defense"); *Rogers v. Kelly,* 284 Ark. 50, 52, 679 S.W.2d 184, 186 (1984) (same); *Ratliff v. Moss,* 284 Ark. 16, 19, 678 S.W.2d 369, 371 (1984) (George Rose Smith, J., concurring) ("Comparative fault has superseded contributory negligence and assumed risk."); *W.M. Bashlin Co. v. Smith,* 277 Ark. 406, 416, 643 S.W.2d 526, 530 (1982) ("It is clear that the legislature intended assumption of the risk to be viewed as an element of comparative fault."); *Simmons v. Frazier,* 277 Ark. 452, 457, 642 S.W.2d 314, 316 (1982) ("Because Arkansas is a comparative fault state, assumption of risk is not a complete bar to recovery but is simply a matter to be considered in deciding fault."); *Ollar v. Spakes,* 269 Ark. 488, 498, 601 S.W.2d 868, 873 (1980) (Fogleman, C.J., dissenting) ("the question of assumption of the risk is ... a matter of comparative fault"); *see also* Ark. Model Jury Instructions Civil 2d, 612 comment (Supp.1986) ("The concept of comparative fault has led to the virtual demise of the doctrine of assumption of risk in many jurisdictions, including Arkan-

---

3. This statute was codified at Ark.Stat.Ann. §§ 27–1763 to 27–1765 at the time of trial in the district court.

sas. To instruct specifically on this particular defense will almost invariably prove to be reversible error.").

Nevertheless, the Arkansas courts have never specified which of the four types of assumption of risk have been subsumed within comparative fault. It is this ambiguity which led the district court to believe that an instruction on assumption of risk could still be appropriate. Thus, we find it necessary to clarify this ambiguity in the way that we believe the Arkansas Supreme Court would if specifically presented with the question.

■ First, it is clear that a plaintiff's conduct which amounts to Type 4 assumption of risk should be considered as one aspect of comparative fault analysis rather than a complete bar to recovery. The adoption of comparative fault represents a legislative judgment that a plaintiff should not be denied recovery for injuries caused by a defendant's negligence simply because the plaintiff was partially at fault, although less at fault than the defendant. The retention of Type 4 assumption of risk as a complete bar, however, has the effect of denying any recovery to a plaintiff who happens to engage in negligent conduct of the peculiar form that overlaps with assumption of risk. This result is clearly inconsistent with the policy determinations underlying the Arkansas legislature's decision to adopt comparative fault. "[W]here assumption of risk coincides with contributory negligence, application of the doctrine operates to frustrate the very result that the comparative negligence statute was designed to achieve." *Rutter v. Northeastern Beaver County School District*, 437 A.2d at 1210 n. 6 (plurality). Dean Prosser also noted that the retention of this form of assumption of risk after legislative adoption of comparative negligence

[i]n all probability ... defeats the basic intention of the statute, since it continues an absolute bar in the case of one important, and very common, type of negligent conduct on the part of the plaintiff. It can scarcely be supposed in reason that the legislature has intended to allow a partial recovery to the plaintiff who has been so negligent as not to discover his [or her] peril at all, and deny it to one who has at least exercised proper care in that respect, but has made a mistake of judgment in proceeding to encounter the danger after it is known.

W. Prosser, Prosser on Torts § 68, at 457 (4th ed. 1971) (footnote omitted). Under Ark.Code Ann. § 16–64–122 and the line of Arkansas cases construing it, Type 4 assumption of risk must no longer be a complete bar to recovery, but rather one element to be factored into the comparative fault analysis.

We next come to Type 3 assumption of risk. Because this form of the doctrine involves reasonable conduct, i.e., faultless conduct, it is clear that Type 3 of assumption of risk cannot have any role in comparative fault analysis. *See, e.g., Segoviano v. Housing Authority*, 191 Cal.Rptr. at 587 ("If we assume a plaintiff has acted reasonably in regard to his [or her] own safety in deciding to confront the risk, then his [or her] act of confronting the risk may not be considered as 'fault' justifying an apportionment of damages."). Type 3 assumption of risk must therefore either remain as a complete defense or serve as no defense at all. This is a more difficult question and one which finds authority on either side. Those courts which have retained Type 3 assumption of risk after the adoption of comparative fault have generally done so on the basis that because Type 3 assumption of risk does not involve fault, it is not affected by the adoption of comparative fault in the same way as unreasonable assumption of risk and therefore should survive. *See, e.g., Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir.1983) (Pa. law); *Keegan v. Anchor Inns, Inc.*, 606 F.2d 35 (3d Cir.1979) (V.I. law); *Scoggins v. Jude*, 419 A.2d 999 (D.C.1980); *Braswell v. Economy Supply Co.*, 281 So.2d 669 (Miss. 1973). Other courts have reached this result by ignoring the distinction between primary and secondary assumption of risk. *See, e.g., Ordway v. Superior Court*, 198 Cal.App.3d 98, 243 Cal.Rptr. 536 (1988). The Restatement (Second) of Torts also takes the position that Type 3 assumption

of risk should absolutely bar recovery, although the effect of the adoption of comparative fault is not separately analyzed. Restatement (Second) of Torts § 496A comment c, 3.

The Restatement position, however, has been subjected to rigorous criticism. *See* F. Harper, F. James & O. Gray, The Law of Torts § 21.0; James, *Assumption of Risk: Unhappy Reincarnation,* 78 Yale L.J. 185 (1968); Note, *Contributory Negligence and Assumption of Risk—The Case for Their Merger,* 56 Minn.L.Rev. 47, 53–58 (1971). We are persuaded for two reasons that the better view is that Type 3 assumption of risk is no longer a defense after Arkansas's adoption of comparative fault. The first of these reasons is the anomaly that would result if reasonable assumption of risk were to continue as a defense while conduct amounting to unreasonable assumption of risk is factored in as only a partial defense under comparative fault. The anomaly, simply put, is that the plaintiff who has acted unreasonably would be allowed a partial recovery (as long as the plaintiff's negligence is less than that of the defendant) while the plaintiff who has acted reasonably would be completely barred from recovery. Prosser & Keeton on Torts § 68, at 498 ("[T]here would be a strange anomaly if a plaintiff who negligently assumed the risk recovered part of his [or her] damages, but the plaintiff who reasonably did so recovered none.") (footnote omitted); Fleming, *Forward: Comparative Negligence at Last—By Judicial Choice,* 64 Cal.L.Rev. 239, 262 (1976) (same); Note, *Contributory Negligence and Assumption of Risk—The Case for Their Merger,* 56 Minn.L.Rev. at 57–58 (same).

The second reason for concluding that Type 3 assumption of risk is no longer a defense in Arkansas is that it inequitably punishes reasonable conduct. This obser-

vation was forcefully made by Prosser and Keeton:

> [W]here the defendant's negligence has forced the plaintiff into a situation where he [or she] must reasonably choose to undergo the risk, there seems to be a fundamental flaw in reasoning that the plaintiff should thereby be held to have forfeited any right to charge the defendant for his [or her] resulting injuries. It would thus appear quite odd if the plaintiff's reasonable assumption of the risk to which he [or she] was exposed by the negligence of the defendant were treated as an absolute bar. Nor logically should it even factor in to reduce the plaintiff's damages, since his [or her] conduct has by definition been free from blame.

Prosser & Keeton on Torts § 68, at 497–98. This reasoning has been adopted by several courts. *See, e.g., Segoviano v. Housing Authority,* 191 Cal.Rptr. at 583–84 ("If the plaintiff's conduct was entirely reasonable under all of the circumstances, we find no basis in reason or equity for barring his [or her] recovery. Elimination of [Type 3 assumption of risk] as a separate defense avoids punishing reasonable conduct."); *Blackburn,* 348 So.2d at 291 ("There is little to commend this doctrine of [Type 3] assumption of risk, and our research discloses no Florida case in which it has been applied.... [T]here is no reason supported by law or justice in this state to give credence to such a principle of law.").

Accordingly, we conclude that Type 3 assumption of risk is not a defense to an action for negligence in Arkansas. Having concluded that both Type 3 and Type 4 assumption of risk have no application beyond comparative fault, we next consider whether the district court erred in instructing the jury on assumption of risk under the facts of this case.[4]

The district court was of the opinion that the conduct of the parties in this case presented assumption of risk in its primary

---

**4.** We do not find it necessary in this case to decide whether Types 1 or 2 assumption of risk have been affected by the adoption of comparative fault because we view the facts of this case as presenting only secondary assumption of risk. We note, however, that several courts

have considered Type 2 assumption of risk to have been abolished by the adoption of comparative fault. *See, e.g., Mizushima v. Sunset Ranch, Inc.,* 737 P.2d at 1161 n. 7; *Rutter v. Northeastern Beaver County School Dist.,* 437 A.2d at 1211 n. 6 (plurality).

sense; it reached this conclusion, however, by defining primary assumption of risk as implied consent to a risk, whether that risk was inherent in the activity *or* created by the defendant's negligence. We believe this analysis erroneously blurred the line between primary and secondary assumption of risk; if all implied consent to known risks were primary assumption of risk it would completely swallow up the secondary types of assumption of risk. We believe, as set forth above, that primary assumption of risk is limited to implied consent to risks that are *inherent* in the activity; implied assumption of non-inherent risks of the defendant's creation is assumption of risk in its secondary form.

■ Properly understood, this case does not involve assumption of risk in its primary form. Rini alleges that he was injured due to Oaklawn's negligence in maintaining a defectively designed gate area and in failing to install a proper safety rail. Neither of these risks is inherent in the activity of horse racing. *Cf. Ashcroft v. Calder Race Course, Inc.*, 492 So.2d 1309, 1311 (Fla.1986) ("Riding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing."). Neither of the parties has argued that this case involves Type 1 express assumption of risk. Therefore, no form of assumption of risk which survives the adoption of comparative fault in Arkansas is applicable to the facts of this case, and accordingly an instruction on assumption of risk should not have been given.

■ There remains, however, the question whether this error warrants reversal in view of the fact that the jury also found Rini 65 percent responsible for his own injuries and thus barred from recovery by Ark.Code Ann. § 16-64-122(b)(2). The district court itself noted this issue, concluding that any error in the instructions was cured by the verdict. 662 F.Supp. at 573. We are not convinced by this point, however, because the assumption of risk instruction confused the jury about Rini's right to recover and placed added emphasis on the possibility that Rini may have been negligent in choosing to ride at Oaklawn.

Under these circumstances, we believe Rini is entitled to a new trial.

Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings.