Phillip LAYTON, Appellant,

v.

UNITED STATES of America, Appellee.

Reba J. RICHARDSON, Administratrix
of the Estate of Ronnie Richardson,
Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 89–2754, 89–2804.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1990.

Decided Nov. 28, 1990.

David Hodges, Little Rock, Ark., for appellant.

Heidi E. Weckwert, Washington, D.C., for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

**1334**

HEANEY, Senior Circuit Judge.

Reba Richardson and Phillip Layton appeal from a grant of summary judgment for the government.[1] They contend that the district court erred in converting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) into a motion for summary judgment without first notifying them of this conversion and providing them with an opportunity to respond. Appellants further contend that the district court erred in relying on Arkansas' assumption of risk doctrine to dismiss several of their claims. We agree that the district court erred in granting the summary judgment without giving appellants an opportunity to respond and remand to the district court for further proceedings consistent with this opinion.

## FACTS

The United States Forest Service hired two contractors, who in turn hired several employees including the appellants, to cut timber in Arkansas' Ozark–St. Francis National Forest. The logging apparently occurred on steep terrain, where the government marked the trees to be felled. While cutting down a marked tree on September 24, 1986, Ronnie Richardson, Reba's husband, was killed by a falling tree. Just over two months later, on similar terrain approximately five hundred yards from the site of the earlier fatality, a falling tree struck Layton, leaving him a quadriplegic.

These tragedies led to this lawsuit. In their complaints, appellants unleashed a barrage of negligence charges against the government. Relying on the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680 (1989), appellants charged the government with negligence (1) in hiring an incompetent contractor, (2) in not ensuring that the victims were covered by workmen's compensation insurance, (3) in super-

vising and enforcing the safety regulations of the work sites, and (4) in not altering the conditions and methods of operation in response to the fatality. The district court dismissed the first two claims based on the discretionary function exception to the Federal Torts Claims Act. The fourth claim was dismissed pursuant to Arkansas' assumption of risk defense, while the district court dismissed the third claim under both the discretionary function exception and the court's assumption of risk analysis.[2]

## DISCUSSION

■ The district court dismissed appellants' claims on summary judgment, although neither party moved for this action. The government did move for dismissal based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and plaintiffs filed a memorandum in opposition to the motion. The district court, without notice to the parties, converted the government's 12(b)(1) motion into a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The plaintiffs were not afforded an opportunity to respond to this development before the court dismissed their cases.

When appropriate, this sort of conversion has been approved. *See Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986) (conversion of a Rule 12(b)(1) motion into a Rule 12(b)(6) motion). *But see Williams v. City of St. Louis,* 783 F.2d 114, 116 (8th Cir. 1986) (Federal Rules of Civil Procedure contemplate entry of summary judgment only after a motion by a party). In this case, while conversion from a 12(b)(1) to a 12(b)(6) motion may have been appropriate, it was error to dismiss the plaintiffs' actions on summary judgment on issues not raised in the motion to dismiss without first

---

1. Two cases with similar facts and identical legal issues have been consolidated for appellate review.

2. Appellants also argue that dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) would not be appropriate. Given the district court's decision to convert the 12(b)(1)

motion into a motion for summary judgment, however, the 12(b)(1) issue is not before us. Similarly, we decline to comment on appellants' contention that the district court erred in dismissing several of their claims under the discretionary function exception of the Federal Torts Claims Act, 28 U.S.C. § 2680(a) (1988).

giving them an opportunity to respond to the new issues.

Federal Rule of Civil Procedure 12(b)(6) provides that if on a 12(b)(6) motion, matters outside the pleadings are presented, "the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." When interpreting this language, appellant courts demand that the district court notify litigants that it has transformed a 12(b)(1) motion into a 12(b)(6) motion and is considering the motion as one for summary judgment, so that the litigants may respond to the issue the court is weighing. *See Davis v. Bryan,* 810 F.2d 42, 45 (2d Cir.1987); *Property Management & Investments, Inc. v. Lewis,* 752 F.2d 599, 605 (11th Cir.1985); *Underwood v. Hunter,* 604 F.2d 367, 369 (5th Cir.1979).

The government argues that this court has carved out an exception to the notice requirement. *Van Leeuwen v. United States Postal Service,* 628 F.2d 1093, 1095 (8th Cir.1980). The government contends that *Van Leeuwen* requires that if a party has submitted affidavits and exhibits outside the pleadings which it understands that the District Court has accepted for consideration, then the non-moving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. Because, in these cases, the government attached two exhibits to each of its motions to dismiss, the government believes that we are controlled by the *Van Leeuwen* exception.

For both legal and equitable reasons, *Van Leeuwen* does not control here. In *Van Leeuwen,* both parties submitted affidavits and exhibits for consideration by the court; here, only the government submitted exhibits.[3] Moreover, *Van Leeuwen* did not involve a 12(b)(6) conversion.

█ A more substantive reason, however, renders *Van Leeuwen* irrelevant. The record in this case supports the view that the plaintiffs reasonably believed that the district court was considering a motion to dismiss on jurisdictional grounds, not a motion for summary judgment for failure to state a claim. In their Responses to Defendant's Motion to Dismiss, plaintiffs recognized that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. Hence, plaintiffs tailored their argument to the 12(b)(1) motion for dismissal rather than mounting an attack against summary judgment disposition. Accordingly, if a district court elects to convert a 12(b)(1) motion into a 12(b)(6) motion subject to summary judgment disposition, the court should notify the parties of this conversion, so that they may file appropriate responses.[4]

The need for such a response is particularly evident here where the factual record is so lean. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). This case satisfies neither of these conditions.

Currently, the factual record is limited to the complaint and the contracts between the United States and the logging contractors; the discovery process has not even begun. Correspondingly, the factual contours of this case are undefined. The events leading up to these accidents, the terms of the victims' employment, the competence of the contractor to organize and supervise the work and the on-site safety instructions and working procedures, are

---

**3.** *Van Leeuwen* emphasized that *both* parties had submitted affidavits and pleadings:

> Van Leeuwen had notice of the court's intention to treat the motion to dismiss as one for summary judgment, because he, along with the other parties, submitted outside the pleadings affidavits and exhibits which he understood that the District Court accepted for consideration.
>
> *Van Leeuwen,* 628 F.2d at 1095.

**4.** Of course, the *Van Leeuwen* exception to this requirement is preserved.

all largely unknown. The government's knowledge, or lack thereof of such competence, and any safety concerns voiced by plaintiffs are all unknown.

Usually, such a deficient record is not ripe for summary judgment. This is particularly true here, since the district court relied on Arkansas' assumption of risk doctrine, which has undergone a radical transformation in recent years, to reach its decision. Given this transformation, the facts of this case must be further developed and then carefully evaluated, lest the assumption of risk doctrine be applied in a case that does not warrant its invocation.

██ On the basis of the record before us, this may have happened here. As this court has recognized, the Arkansas courts have consistently held that the common law assumption of risk defense has merged into Arkansas' statutory comparative fault scheme. *See Rini v. Oaklawn Jockey Club,* 861 F.2d 502, 507 (8th Cir.1988). The Supreme Court of Arkansas recently confirmed this development, explaining: "This court has held that assumption of risk by a party will not bar recovery but will be considered when assessing fault." *Bryant v. Eifling,* 301 Ark. 172, 782 S.W.2d 580, 582 (1990) (citations omitted). Because Arkansas usually considers assumption of risk only in assessing fault and not as a complete bar to recovery, it is generally impermissible to hold as a matter of law that assumption of risk bars a claim. To reach this holding on summary judgment, the assumption of risk doctrine would have to retain its discarded quality of being a complete bar to recovery.

To justify its decision that the assumption of risk doctrine barred recovery here,

the district court cited both Arkansas and Eighth Circuit case law. After appropriately noting that the government is liable only if under the same circumstances a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred,[5] the district court correctly concluded that the government exercised sufficient control over the contractors' operations to create a duty to appellant,[6] thus, in substance, rejecting the government's claim of lack of subject matter jurisdiction. The district court then examined Arkansas case law, inquiring whether the appellants were injured by "obvious hazards which are an integral part of the work the contractor was hired to perform." *Jackson v. Petit Jean Electric Co-Op,* 270 Ark. 506, 606 S.W.2d 66, 68 (1980). According to *Jackson:* "The duty of an employer of independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform." *Id.* Combining this analysis with an earlier Arkansas case,[7] the district court concluded that cutting trees on steep terrain presented an obvious risk of injury to appellants and that the defendant therefore owed no duty of care.

We question this reliance on *Jackson* and *Richardson.* In *Jackson,* unlike here, the injured party had already recovered under the worker's compensation act from the contractor's insurance carrier; this recovery appears to have influenced the Arkansas court's resolution of the civil suit involving the same injuries.[8] More decisive, however, is that the district court deployed *Jackson* and *Richardson* to justify an assumption of risk bar to dismiss appellants'

---

5. *See* 28 U.S.C. § 1346(b) (1988).

6. *See McMichael v. United States,* 856 F.2d 1026, 1034 (8th Cir.1988) and *McMichael v. United States,* 751 F.2d 303, 309 (8th Cir.1985).

7. *Richardson v. Huitt,* 238 Ark. 288, 379 S.W.2d 265 (1964) (appellee assumed the hazard of falling when he stepped on a dead limb while thrashing a pecan tree).

8. While outlining the facts, the *Jackson* court noted "Jackson recovered under the worker's compensation act from Johnson Construction Company's worker's compensation insurance carrier, Seaboard Fire and Marine Insurance Company, also a petitioner herein, and sought to recover for the same injuries by filing a civil action against Petit Jean on the theory of negligence and strict liability." 606 S.W.2d at 68.

claims.[9]

We do not believe that such a deployment was justified. Arkansas has not recognized assumption of risk as a complete bar to recovery since 1982. *See Baxter v. Grobmyer Bros. Const. Co.*, 275 Ark. 400, 631 S.W.2d 265 (1982). To the contrary, since that date, the Supreme Court of Arkansas has limited assumption of risk analysis to comparing fault. *See Rini v. Oaklawn Jockey Club*, 861 F.2d 502, 507 (8th Cir.1988). Given these facts, the district court erred in applying assumption of risk as a complete bar to recovery.

The district court also relied on the law of this circuit to support its assumption of risk analysis. Citing *Rini v. Oaklawn Jockey Club*, the district court noted that this court has not held that the assumption of risk bar is no longer applicable to the situation where the plaintiffs assumed a known risk inherent in a particular activity. In *Rini*, this court identified four types of assumption of risk, ruling that under Arkansas' comparative fault regime, assumption of risk no longer applied as a complete defense to the two types of assumption of risk before the court in that case, while expressly declining to make a similar judgment about the two types of assumption of risk not before the court. *Rini*, 861 F.2d at 509. According to the district court, the instant case should be characterized as a "Type 2" case, "where the plaintiff has assumed known risks *inherent* in a particular activity or situation." *Rini*, 861 F.2d at 506. From this conclusion, the district court reasoned that because the Eighth Circuit expressly declined to decide whether the assumption of risk bar applied to Type 2 cases, its decision in *Rini* was still good law. *See Rini v. Oaklawn Jockey Club*, 662 F.Supp. 569 (W.D.Ark.) (Arnold, D.J.), *rev'd* (assumption of risk not affected by comparative fault scheme) 861 F.2d 502 (8th Cir.1988). We cannot accept this reasoning.

This case is not a Type 2 situation. In a Type 2 case, "the assumed risks are not those created by the defendant's negligence, but rather by the nature of the activity itself." *Rini*, 861 F.2d at 506. Here, appellants contend that the government both negligently selected a contractor that did not have the experience necessary to organize and safely complete the contract and negligently supervised the operations. Thus, the risk was not created by the activity itself, but rather by the government.

*Rini*, on the basis of the sparse record before us, would classify this situation as a Type 3 case, or one "where the plaintiff is aware of a risk created by the negligence of the defendant and proceeds or continues voluntarily to encounter it and the plaintiff's conduct in so doing is entirely reasonable in that the risk is small or the plaintiff proceeds with all due caution." *Id.* Here, appellants' actions were entirely reasonable: either they cut trees, or lose their jobs. The problem is that they may not have been instructed as to how to proceed in a safe manner or they may not have been furnished with the necessary equipment or help to do the job safely. Recognizing that the Supreme Court of Arkansas no longer imposes an assumption of risk bar, *Rini* held "that Type 3 assumption of risk is not a defense to an action for negligence in Arkansas." *Rini*, 861 F.2d at 509. Thus, the district court should not have relied on Arkansas' assumption of risk doctrine to dismiss appellants' claims.

The assumption of risk bar does not apply even if this case is classified as a Type 2 case. On at least two occasions, the Supreme Court of Arkansas has held that the assumption of risk defense cannot completely bar recovery in situations where the plaintiffs assumed a known risk inherent in a particular activity. *See Bryant v. Eifling*, 301 Ark. 172, 782 S.W.2d 580, 582 (1990) (assumption of risk did not bar recovery for plaintiff/passenger where defendant/driver lost control of his car on a

---

9. After concluding that *Jackson* and *Richardson* barred some of appellants' claims, the district court introduced the next paragraph with: "It could be argued that *Rini* bars application of the assumption of risk," thereby implying that *Jackson* and *Richardson* dictated the imposition of an assumption of risk bar.

**1338**

curve while traveling about sixty miles per hour after both parties had consumed five or six beers over the course of the evening); *Dawson v. Fulton*, 294 Ark. 624, 745 S.W.2d 617, 619 (1988) (assumption of risk does not bar recovery where plaintiff/employee performed a task even though he knew it would be dangerous). Based on these and other cases,[10] we believe that on the record before us the Supreme Court of Arkansas would not apply an assumption of risk bar.

Reversed and remanded for action consistent with this opinion.

---

10. *See Wortman v. Shipman*, 293 Ark. 253, 737 S.W.2d 438, 440 n. 1 (1987), *Ratliff v. Moss*, 284 Ark. 16, 678 S.W.2d 369, 371 (1984) (Smith, J., concurring), *Rogers v. Kelly*, 284 Ark. 50, 679 S.W.2d 184, 186 (1984), *W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526, 530 (1983),

and *Simmons v. Frazier*, 277 Ark. 452, 642 S.W.2d 314, 316 (1982).